PER CURIAM.
This is a workers’ compensation appeal which raises the issues of whether the deputy correctly determined that Minson was the employee of Daytona Beach Community College (Daytona) and not the special or loaned employee of Volusia County Council on Aging (Volusia), whether the deputy properly computed the average weekly wage, and whether the deputy correctly found that Minson was TTD from 3/18/80 through 4/22/80. We affirm the deputy’s finding that Daytona was the employer of Minson but reverse the calculation of average weekly wage and the finding of temporary total disability for the dates indicated. Our affirmance on point one renders the cross appeal moot.
Minson was a participant in the federally funded Comprehensive Employment Training Program commonly referred to as CETA. This program was administered by *776 Daytona and Minson was attending courses there to obtain her GED. She attended classes for approximately four hours each morning and was assigned by Daytona to Volusia for “work experience” which is “designed to enhance employability of individuals through the development of good work habits and basic work skills.” 20 CFR Section 676.26—4(aXl) (1980). Minson received a stipend of $2.90 per hour for attending class and for the time she spent at Volusia. The checks were issued by Daytona from a fund for developmental education which includes classroom training and work experience.
As part of its program Volusia provided transportation for senior citizens, and Min-son frequently accompanied the driver on his routes. On June 13, 1979, while on one of these trips Minson injured her neck in an automobile accident. Dr. Neviaser, Min-son’s treating physician, testified on deposition that Minson had not reached MMI and was still TTD as of 4/22/80. However, this opinion was based on his belief that Minson was working in a laundry where she would have to pull heavy items from the washers and dryers. He was not aware of her activities at Daytona or at Volusia.
Claimant testified that when she accompanied Volusia’s driver she helped elderly persons in ways such as dressing and climbing in the van. Ms. Milstead, the supervisor at Volusia, testified Minson did not have any specific duties to perform, that she was primarily being exposed to a work environment, and if Minson helped the senior citizens by opening doors or in other ways this was done out of politeness, not as an assignment.
Dr. Neviaser’s testimony is not competent substantial evidence that Minson was TTD from March through April 22, 1980. At best, it was based on a misapprehension of her work situation and does not, therefore, comport with logic and reason. Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla.1957).
The deputy erred in considering all of Minson’s hours in calculating the average weekly wage. Under § 440.14(l)(f), Florida Statutes (1978), if a worker choses to work part-time on a regular basis this fact is properly taken into consideration in calculating the average weekly wage. The intention of the parties regarding hours to be worked determines the calculation. Perkins v. Heller Brothers Packing Corp., IRC Order 2-3542 (1978). Here, the parties clearly intended that Minson would be engaged in classroom training for part of her day and in work for part of her day. We find no rationale or authority for considering claimant’s hourly stipend for class attendance to be wages, and conclude therefore that only those hours which the parties intended to be work experience should be included in calculating the average weekly wage. Cf. Sears Roebuck & Co. v. Beasley, IRC Order 2-3687 (1979).
We find no error in the deputy’s conclusion that Daytona was the employer. Daytona was the recipient of the CETA funds and administrator of the program, and, as such, had primary control over Min-son’s activities. Although Volusia may have exercised some control over Minson, the testimony indicates this control was minimal. Daytona initially assigned Min-son to Volusia and determined whether she would continue to go there.
We conclude also that Daytona was the primary benefactor of having Minson assigned to Volusia. In order to continue CETA funding Daytona was required to obtain placement in social agencies for certain of its classroom/work experience trainees. This indicates a practice by which such an educational institution may have students acquire learning or training in an industrial setting, exposed to the hazards of a particular industry. An educational institution would appear to be assuming employer functions when it initiates the program, makes the necessary arrangements with an industry, maintains control of overall assignments and compensation, and benefits by the receipt of funds either from tuition paid by the students or from CETA or other governmental grants. In this context, the requirements of Title 29 U.S.C.A. *777 § 823 (1980 Supp.), that the prime sponsor of the CETA program provide workers’ compensation or equivalent protection to participants should be interpreted to mean that the student/worker must be given protection equivalent to that received by the workers in the particular industry. By accepting students for participation in such activities and by assigning them to those activities as part of their educational experience, Daytona has stepped into the shoes of an employer, and, absent some permissible contract limitation, must assume the responsibility concomitant to that role.
Accordingly, the deputy’s order is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
MILLS, C. J., WENTWORTH, J., and VIRGINIA Q. BEVERLY, Associate Judge, concur.