**JACKSON HOUSING AUTHORITY,**
**Plaintiff-Appellee,**

v.

**AUTO–OWNERS INSURANCE COMPANY, et al., Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 18, 1984.

Application for Permission to Appeal
Denied by Supreme Court
March 4, 1985.

J. Arthur Crews, II, Jackson, for plaintiff-appellee.

Jerry D. Kizer, Jr., Jackson, for defendant-appellant, Auto-Owners Insurance Co.

Harold W. McLeary, Jr., Humboldt, and Harold F. Johnson, Jackson, for defendant-appellee, Travelers Insurance Co.

Avon N. Williams, Jr. and Russell T. Perkins, Nashville, for defendant-appellee, Ralph Wilson.

Sidney W. Spragins, Jackson, for defendant-appellee, Aetna Insurance Co.

NEARN, Presiding Judge, Western Section.

This is an appeal from a declaratory judgment action filed by Jackson Housing Authority (JHA), seeking a determination of the rights and liabilities of JHA and others for injuries sustained by Ralph Wilson while he was working as a painter at facilities owned by JHA. Wilson was a CETA participant in a program administered by Chickasaw Area Development Commission (CADC). CADC paid workers' compensation premiums for Wilson to Aetna Insurance Company, and also issued Wilson's pay checks. Under the CETA program CADC assigned Wilson to JHA for on the job training, and JHA was responsible for Wilson's training and supervision. JHA paid him no wages and did not include Wilson in its workers' compensation coverage, with its carrier, Travelers' Insurance Company.

After Wilson was injured, he collected workers' compensation benefits from Aetna, CADC's workers' compensation insurance carrier. He also filed suit against JHA's carrier, Travelers, seeking workers' compensation benefits. In addition, Wilson filed a common law tort action against JHA, alleging that he was injured as a result of JHA's and its employees' negligence and that he was not an employee of JHA. At this point, Auto-Owners Insurance Company, JHA's liability insuror, notified JHA that it was defending the tort action under a reservation of rights. As a basis for such position, Auto-Owners claimed that JHA did not notify it of the claim "as soon as practicable," as required by the policy. Auto-Owners had been noti-

fied by Aetna of the accident some three months after it occurred.

JHA then filed the declaratory judgment action from which this appeal arose, seeking a declaration of the rights and obligations of Wilson, JHA, CADC, Aetna, Travelers and Auto-Owners under these circumstances.

The Chancellor found that Wilson was the employee of CADC within the meaning of the Tennessee workers' compensation laws, that Wilson was not an employee of JHA for workers' compensation purposes, and that JHA gave notice to Auto-Owners "as soon as practicable" pursuant to the terms of JHA's liability policy with Auto-Owners. The Chancellor, therefore, ordered Auto-Owners to defend JHA in the tort action filed by Wilson and to pay any judgment against JHA in that lawsuit within the limits of the policy.

Auto-Owners has appealed, stating as the issues on appeal:

I. Whether Ralph Wilson, a CETA participant, was an employee of Jackson Housing Authority, a CETA user, for Tennessee workers' compensation purposes within the exclusionary provisions of Auto-Owners' liability policy with Jackson Housing Authority.

II. Whether Jackson Housing Authority gave notice to its liability insurer "as soon as practicable" after the accident involving Ralph Wilson as required by the Auto-Owners liability policy with Jackson Housing Authority.

Auto-Owners takes the position on appeal that the Chancellor erred in finding that Wilson was an employee of CADC. Auto-Owners argues that Wilson was an employee of JHA. It also argues that JHA did not give notice to Auto-Owners "as soon as practicable." JHA and Aetna, CADC's workers' compensation carrier, agree with Auto-Owners that Wilson was an employee of JHA. However, JHA disagrees with Auto-Owners on the issue of notice, asserting that JHA did give notice under the policy. Wilson, the injured worker, and Travelers, JHA's workers' compensation carrier, disagree with Auto-Owners

on the issue of employment. They contend that the Chancellor correctly found that CADC was Wilson's employer. Wilson joins JHA, however, in asserting that JHA gave notice to Auto-Owners. Travelers and Aetna take no position on the notice issue.

As to this Court's position in the matter, in part we agree with all the various positions taken and in part we disagree with all of them. We will now attempt to explain that seemingly incongruous position.

Insofar as we are able to tell, the determinative issue presented by this appeal is one of first impression in this State. That issue is who is to be considered a CETA worker's employer under the provisions of the Worker's Compensation Act of this State (T.C.A. § 50–6–101 et seq.).

The acronym, CETA, stands for Comprehensive Employment Training Act, the style of a federal act which created a federally funded program for the economically disadvantaged. A purpose of the act is to provide an opportunity for the economically disadvantaged who have little or no work experience to learn work and job skills in order that they may become more attractive applicants in the job market. The program is administered by local agencies. CADC is the agency for the Jackson area. CADC has the responsibility of training those who qualify for the program. This responsibility is met by CADC by locating businesses which are willing to afford the CETA workers on the job training. Simply put, the program works in this matter: CADC sends a CETA worker to a participating business that puts the workers to work in order to obtain job training. The business trains the worker and incidental to that process, receives the fruits of the worker's labor at no expense as CADC pays the worker his wages and pays to its insurer the insurance premiums for workers' compensation coverage. The participating business pays no wages to the CETA worker and in this case did not carry or list the CETA worker as one covered under its compensation coverage.

In this case Wilson was assigned to JHA by CADC. JHA kept the time sheets on Wilson and based on those sheets, CADC paid him his wages. CADC monitored Wilson's progress. JHA could, however, terminate Wilson's services, but was first required to confer with a CADC supervisor in an effort to resolve the problem before doing so. JHA furnished all supplies and tools to Wilson to perform the same work as done by "regular" employees. The times for lunch breaks and rest breaks for Wilson were set by JHA.

As noted at the outset, the Chancellor concluded from the facts, which are actually undisputed, that Wilson was the employee of CADC. The practical effect of that holding is to permit Wilson to recover worker's compensation payments from CADC's carrier, Aetna, and to maintain a common law tort action against JHA which, if successful in judgment, will be paid by JHA liability carrier, Auto-Owners.

The determinative issue in this case has been addressed by other jurisdictions. The minority hold, under somewhat similar facts but not necessarily similar statutory law, that the CETA agency is the employer and the business participant is not. *See Daytona Beach Community College v. Minson* (Fla.Ct.App.1981) 400 So.2d 775.

The majority view, under similar facts but not necessarily similar statutory law, is that the business is the employer and not the CETA agency. *See Keller v. Old Ly. Township*, 286 Pa.Super. 339, (1980) 428 A.2d 1358.

These divergent results have been reached usually based on a particular Court's perception of the applicability of the ordinary rules governing such matters, such as the right of control, which party pays wages or workers compensation premiums, etc. However, these foreign decisions are not binding on this Court.

■ We agree with the statement found in Aetna's brief that the relationships created by the CETA program simply do not fit the traditional mold. We have, first, turned our attention to our state law as embodied in our code for a determination of the issue, which it appears, none of the briefs have attempted to do. T.C.A. § 50–6–102 (1983) defines an "employee" as "every person—in the service of an employer as defined in subdivision (a)3, under any contract of hire or *apprenticeship written or implied.*" (emphasis added). Subsection (a)3 defines an "employer" as any person or entity "using the services of not less than (5) persons for pay ..." Other jurisdictions may hold what they will, as is their prerogative, but under the above quoted provisions of our law, the conclusion is inescapable to us that Wilson must be considered an employee of JHA.

The undeniable purpose of the CETA program is to establish a federally funded apprenticeship training for the economically disadvantaged. A dictionary definition of an apprentice provides that it is:

> one who is bound by ... or legal agreement to serve another person for a certain time with a view to learning an art or trade in consideration of instruction therein....

Webster's Third New International Dictionary (1971). Such training may be designated as "on the job" or otherwise, but it is none the less an apprenticeship training. JHA was a willing participant in the CETA program administered by CADC. It was bound to know the program's purpose. It agreed to take on Wilson and to train him. It had an express contract with CADC to do so and an implied contract at the least with Wilson to do so. There is no dispute that JHA employs more than five persons for pay, so it qualifies as an employer under T.C.A. § 50–6–102(a)(3). This was an arrangement for mutual benefit and both JHA and Wilson profited thereby. Wilson received training to enable him to better compete in the job market and JHA received the benefit of his labor. It was a mutual exchange of one for the other. Accordingly, we hold that Wilson was an employee of JHA. However, such holding does not mean that he is not also an employee of CADC.

This state recognizes that an employee may be employed by two separate entities at the same time. See T.C.A. § 50–6–211; *Riverside Mill Company v. Parsons* (1940) 176 Tenn. 381, 141 S.W.2d 895. We have already shown that, under T.C.A. § 50–6–102, JHA qualifies as an employer, and insofar as that employer is concerned, Wilson, as an apprentice, qualifies as its employee. CADC has never contended that it was not an employer of Wilson. CADC paid Wilson his wages and made necessary federal and state deductions therefrom. CADC had even the authority to control whether or not Wilson was to go to JHA for training. In fact, whether Wilson liked it or not, CADC could terminate Wilson's relationship with JHA. Admittedly, the relationship between CADC and Wilson was not that of employer-employee ordinarily contemplated in a free enterprise system. We know of no enterprise established for profit that pays its employee a salary while being trained by others, so that the employee can be trained to go to work for other than the employer paying the salary. However, it certainly is not unusual for an employer to send an employee elsewhere to learn a skill and pay that employee at the same time. The reason is that the employer hopes to have better trained employees who can better accomplish the work that they will be expected to do for that employer upon completion of the training. The principal difference in the CADC arrangement with Wilson and the ordinary employer's arrangement under similar circumstances is one of motivation. CADC does not have the ordinary motivation of profit and self interest. We are of the opinion that a difference in employer motivation will not alter the employer-employee relationship created by these circumstances.

Ralph Wilson applied for work with CADC pursuant to the CETA program. CADC certified Wilson as eligible, assigned him to work at JHA, approved his work schedule, the number of breaks, and lunch periods he was entitled to, withheld payroll deductions and wrote Wilson's pay checks. CADC, further, was authorized to and did monitor Wilson's job progress and training and, if unsatisfied with JHA's supervision and training, could remove him from JHA and transfer him to another worksite. Finally, CADC had the authority to determine whether to terminate Wilson from the CETA program. Accordingly, we hold that Wilson was also the employee of CADC.

Since this is a matter of declaratory judgment seeking an adjudication of the rights of the various parties and is to be reviewed by us *de novo* pursuant to Rule 13(d) T.R. A.P., we must make such decree as we believe the case requires in the event we are in disagreement with the Court below. *See Taylor v. Amalgamated Meat Cutters* (1981 Tenn.App.W.S.) 619 S.W.2d 120, 121.

Our holding now presents the problem of a construction of T.C.A. § 50–6–211, covering the payment of claims by two or more joint employers. As pointed out earlier, because of the CETA program, which, of course, was not within the contemplation of the legislature when T.C.A. § 50–6–211 was drafted, the situation now presented does not fit neatly into any legislative mold. The stated code section applies when the employee is "paid jointly" by the employers. In matters such as presented by this case we hold that CADC pays the employee in dollars and the CETA user pays the employee with training and experience. Accordingly, the employee is "paid jointly." Interpretation of the verbiage "such employers shall contribute to payment of such compensation in a proportion of their several wage liability to such employee" is a matter we need not now address as the ultimate phrase of T.C.A. § 50–6–211 provides "however, nothing in this section shall prevent any agreement between the different employers between themselves as to the distribution of the ultimate burden of such compensation." The proof in this case shows that it was always the understanding between CADC and JHA that CADC would have the ultimate burden of such compensation.

There yet remains the issue of the propriety of the notice of JHA to Auto-Owners. The issue is not rendered moot

because of our holding regarding joint employment as Wilson's common law tort action against JHA is yet pending. The duty to defend the insured and the obligation of the insurer to pay valid claims under the terms of the policy are not the same thing. The insurer has the duty to defend against even those claims that are without merit. *See Dempster Bros., Inc. v. United States Fidelity & Guaranty Co.* (1964 E.S.) 54 Tenn.App. 65, 388 S.W.2d 153. Accordingly, if the notice to Auto-Owners was proper, it has the duty to defend JHA against the pending claim of Wilson to its termination. We hold that the notice given by JHA was made "as soon as practicable" as required by the policy. In *TransAmerica v. Parrott* (1975 Tenn.App.W.S.) 531 S.W.2d 306, this Court held

> that in situations such as this, the insured is obligated to notify the insurer "as soon as practicable" from the time the insured knew or should have known that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer. 513 S.W.2d at 314.

Because this is a matter of first impression no one, including all counsel involved, was sure whether the facts of this case would give rise to a common law claim by Wilson against JHA. We find that under the circumstances JHA did give notice to Auto-Owners as soon as it could reasonably believe a claim would be made against it. We concur in the Chancellor's ruling on the question of notice.

The result is that the Chancellor is affirmed in his holding that Wilson was an employee of CADC, but we hold such employment was not exclusive and further hold that Wilson was also and at the same time the apprentice employee of JHA. We also affirm the Chancellor's ruling that JHA's notice to Auto-Owners was properly made under the terms of the policy.

Costs of this appeal are assessed equally between JHA, Aetna and Auto-Owners.

Done at Jackson in the two hundred and ninth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

CRAWFORD and HIGHERS, JJ., concur.