IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 11, 2002

# INSURA PROPERTY AND CASUALTY INSURANCE COMPANY v. TERRY ASHE, ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 00192      C.K. Smith, Chancellor**

---

**No. M2002-00374-COA-R3-CV - Filed February 6, 2003**

---

This is a declaratory judgment action wherein Plaintiff insurance company seeks a declaration as to coverage under its commercial general liability insurance policy issued to Lineberry Properties, Inc. Defendant, Dewey Lineberry, and his wholly owned corporate entities, Defendants Lineberry Properties, Inc. and Lawdog Communications, LLC, sought defense and indemnity from Plaintiff insurance company relative to a defamation, libel, slander, and outrageous conduct complaint previously filed against them in the Circuit Court for Wilson County, Tennessee by Defendants, Terry and Judy Ashe. The trial court granted summary judgment to the insurance company holding that the general commercial liability policy provided no coverage as to the underlying action. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Elliott Ozment, Nashville, Tennessee, for the appellants, Lineberry Properties, Inc., Lawdog Communications, LLC and Dewey L. Lineerry.

Bryan Essary and Kenneth P. Flood, Nashville, Tennessee, for the appellee, Insura Property and Casualty Insurance Company.

## OPINION

Insura Property and Casualty Insurance Company issued its commercial general liability (CGL) insurance policy to Lineberry Properties, Inc. for the period May 1, 1998 through May 1, 1999. Lineberry Properties, Inc. is a corporation, with the stock thereof owned by Dewey L. Lineberry. Lawdog Communications, LLC, is another entity wholly owned by Dewey L. Lineberry.

On January 15, 1999, Terry Ashe and Wife, Judy Ashe, filed suit against Dewey L. Lineberry, Lawdog Communications, LLC, and Lineberry Properties, Inc. seeking damages from allegations that the Lineberry defendants intentionally and maliciously committed acts of slander and libel against Mr. and Mrs. Ashe through oral and published statements asserting that Terry Ashe had procured the killing of the former husband of Judy Ashe and other published statements maligning the Ashes. The Ashes sought damages, compensatory and punitive, in the amount of ten million dollars.

Defendants called upon Insura Property and Casualty Insurance Company to defend them in the Ashe lawsuit, and, on May 22, 2000, Insura filed a Complaint for Declaratory Judgment seeking a declaration that the general commercial liability policy provided no coverage for Lineberry and his corporate entities for the matters asserted in the Ashe lawsuit. On June 29, 2000, Lineberry and his corporate entities filed an answer asserting that coverage was proper and filed a Counter-Claim for breach of contract and violation of the Tennessee Consumer Protection Act. Tenn. Code Ann. § 47-18-104. Terry Ashe and Judy Ashe, having been named as defendants by Insura, answered on July 10, 2000, essentially asserting that they had no dog in this fight.

On December 10, 2001, Plaintiff filed a Motion for Summary Judgment that, on February 1, 2002, was granted by the trial court. On February 12, 2002, the Lineberry Defendants timely appealed.

Coverage was properly denied by the trial court for the same reasons that coverage was denied in *American Indemnity Co. v. Foy Trailer Rentals, Inc.,* No. W2000-00397-COA-R3-CV, 2000 WL 1839131 (Tenn. Ct. App. Nov. 28, 2000) (no Tenn. R. App. P. 11 application filed). The coverage in *Foy Trailers* is stated in precisely the same language as appears in the Insura policy. In *Foy Trailers*, this Court held:

> Commercial general liability policies are designed to protect the insured from losses arising out of business operations. CGL policies are not 'all-risk' policies; rather, these policies provide the insured with coverage up to the policy limits for damages for which the insured becomes liable as a result of tort liability to a third party. When facing coverage questions, the essential elements of a CGL policy should be construed in the following order: the declarations, insuring agreement and definitions, exclusions, conditions, and endorsements. The insuring agreement reflects the limits of an insurer's liability. If coverage is not found in the insuring agreement, it will not be found elsewhere in the policy. Exclusions are read in terms of the insuring agreement to which they apply, and they can only decrease coverage.

*Foy Trailer Rentals*, 2000 WL 1839131, at *3 (citations omitted).

Lineberry Properties, Inc. is the only named defendant insured by the Insura policy. Throughout the policy appears the unambiguous statement: "Named insured's business: property owner." The applicable coverage provision in the Insura policy provides:

1.	Insuring Agreement
   a.	We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for personal injury or advertising injury to which this insurance does not apply. We may, at our discretion, investigate any occurrence of offense and settle any claim or suit that may result. But:
   (1)	The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
   (2)	Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b.	This insurance applies to:
   (1)	Personal injury caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
   (2)	Advertising injury caused by an offense committed in the course of advertising your goods, products or services.
but only if the offense was committed in the coverage territory during the policy period.

For the insurance coverage to be available in this case, such "personal injury" must be caused by "an offense arising out of your business." It is neither alleged, nor can it be alleged, that the personal slanders and defamations against Terry and Judy Ashe allegedly made by Dewey Lineberry arose out of the "business" of owning property. There is no assertion, nor could there be, that an "advertising injury" occurred "in the course of advertising your goods, products or services."

Appellant asserts in its brief:

The complaint in the Ashe lawsuit, if anything, establishes that the alleged involvement of Lineberry Properties, Inc. in any alleged defamation did arise out of the business of Lineberry Properties, Inc. . . . The business of Lineberry Properties was 'property owner,' and 'property ownership' included 'renting.' . . . In the ordinary sense of the term, 'renting' can certainly include the furnishing of office space, utilities, office furnishings and equipment. The allegations of the Ashe lawsuit clearly show that it was this business activity which gave rise to Lineberry Properties' alleged liability. Appellant contends that there is absolutely nothing in

the record which indicates to the contrary. The allegations of the Ashe lawsuit, as claimed by the Appellee, certainly do not support its contention that claims against Lineberry Properties 'did not arise out of the business of Lineberry Properties.'

We respectfully disagree. The business of being a "property owner" does not include the business of personally libeling and slandering other people. Even if coverage were otherwise provided, the Insura policy provides that personal injury or advertising injury is excluded from coverage as to matters "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." The allegations in the Ashe lawsuit affirmatively state, "These statements were known by the defendants to be untruthful and calculated by the defendants to harm the reputation and good name of the plaintiffs."

The law is well settled in Tennessee and elsewhere that, in determining coverage under the policy, the court must look alone to the facts pleaded in the underlying complaint and determine whether or not those allegations bring the case within the coverage of the policy. This Court has held:

> An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. *Jackson Housing Authority v. Auto-Owners Ins. Co.*, 686 S.W.2d 917 (Tenn.App.1984). The duty to defend is broader than the duty to indemnify. This court must review the allegations of the complaint and determine whether any of them are covered under the policy. If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. *U.S. Fidelity & Guar. Co. v. Murray Ohio Manuf. Co.*, 693 F.Supp. 617 (M.D.Tenn.1988). An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, 19784 T.V., 1989 WL 91082 (Tenn.App.August 14, 1989).

The Court in *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831 (Tenn. 1994), stated the applicable rule as follows:

> It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations contained in the complaint in that action. . . . Accordingly, if the allegations . . . are within the risk insured against and there is a potential basis for recovery, then [the insurer] must defend . . . , regardless of the actual facts or the ultimate grounds on which . . . liability to the injured parties may be predicated. . . . In any event, the pleading test for determination of the duty to defend is

-4-

> based exclusively on the facts as alleged rather than on the facts as they actually are. . . .

*Id.*, at 835 (quoting *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me.1977)).

> Thus, the scope of our inquiry in determining whether Bituminous possesses a duty to defend is confined to the averments of the pleadings. *Graves*, 745 S.W.2d at 283; *First National Bank in Bristol v. South Carolina Ins. Co.*, 207 Tenn. 520, 341 S.W.2d 569 (1960).

*Drexel Chemical Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996).

In vain, one may search the complaint in the Ashe case for an allegation of anything that did not involve the deliberate, knowing, and intentional acts and declarations of Dewey L. Lineberry. Not "even one" of the allegations of the underlying complaint bring the Ashe action under the coverage of the Insura policy.

The assertions of Defendants Lineberry seek an untenable construction of the underlying complaint. The United States 7th Circuit Court of Appeals, applying Tennessee law, correctly addressed the same contention.

> Our review of the Film House complaint reveals that it alleges facts which solely and entirely relate to a claim for conversion. Koenig's attempt to use single words and phrases contained within the complaint out of context and contrive six additional causes of action is unavailing. The frailty of Koenig's position was evident when, at oral argument, its counsel asserted that Massachusetts Bay 'had a duty to defend . . . because it wasn't clear that there wasn't at least one word in [the Film House] complaint that had the potential for coverage.' In our view, this overstates the extent to which we are to review the complaint. *See English v. Virginia Surety Co.*, 196 Tenn. 426, 268 S.W.2d 338, 340 (1954) (emphasis added) (explaining that '[a]n insurance policy and its endorsements *are to be read as a whole. . . .*'). It would be inappropriate for us to conduct a word-by-word analysis of the complaint, patching one word from one paragraph to another word from another paragraph, because such a review might very well cause us to find meaning where none otherwise existed. The proper extent of our review simply requires us to focus attention on the facts alleged as they appear in the complaint to determine if they could even potentially be covered by the Massachusetts Bay policy.

*Massachusetts Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1126 (7th Cir. 1998).

As held in *Foy Trailers*, a commercial general liability policy is not an "all risk" policy. To require Insura to provide coverage for the personal slanders and defamations uttered by Dewey L. Lineberry, that form the basis for the Ashe lawsuit, would indeed convert a commercial general liability policy into an "all risk" policy.

Summary judgment was properly granted; the judgment of the trial court is affirmed. Costs are assessed against Appellants.


_____
WILLIAM B. CAIN, JUDGE