**NEW CASTLE COUNTY, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Defendants.**

Civ. A. No. 85–436–JLL.

United States District Court,
D. Delaware.

Nov. 2, 1987.

Susan C. Del Pesco and Catherine J. Sponseller of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiff New Castle County.

James F. Kipp of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Del., John P. Arness and Jamie M. Bennett of Hogan & Hartson, Washington, D.C., of counsel, for defendants Hartford Acc. and Indem. Co. and Twin City Fire Ins. Co.

Norman M. Monhait of Morris & Rosenthal, P.A., Wilmington, Del., and Roger E. Warin, Virginia L. White–Mahaffey and Helen D. Irwin of Steptoe & Johnson, Washington, D.C., of counsel, for defendant Home Ins. Co.

John G. Mulford and Brian A. Sullivan of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Del., for defendant Continental Cas. Co.

Raymond L. Becker of Becker & Becker, Wilmington, Del., and Edward C. German of German, Gallagher & Murtagh, Philadelphia, Pa., of counsel, for defendant U.S. Liability Ins. Co.

Edmund D. Lyons, Jr. of Aerenson, Ferrara & Lyons, Wilmington, Del., Dennis M. Flannery and A. Stephen Hut, Jr. of Wilmer, Cutler & Pickering, Washington, D.C., and Clifford B. Hendler and Sean M. Fitzpatrick of Colton and Boykin, Washington, D.C., of counsel, for defendant Ins. Co. of North America.

William J. Cattie III and Roger D. Landon of Heckler & Cattie, Wilmington, Del., for defendant U.S. Fire Ins. Co.

Frank O'Donnell and William L. Garrett, Jr. of O'Donnell & Garrett, Wilmington, Del., and Nancy J. Gellman of Conrad & O'Brien, P.C., Philadelphia, Pa., of counsel, for defendant Nat. Union Fire Ins. Co.

Gary W. Aber of Heiman and Aber, Wilmington, Del., James E. Rocap III, Thomas B. Carr and Stephen L. Nightingale of Miller, Cassidy, Larroca & Lewin, Washington, D.C., of counsel, for defendant Aetna Cas. and Sur. Co.

Thomas Reed Hunt, Jr. and Brett D. Fallon of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Robert N. Sayler and John G. Buchanan III of Covington & Burling, Washington, D.C., of counsel, for Stauffer Chemical Co.

Thomas Reed Hunt, Jr. and Brett D. Fallon of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for ICI Americas, Inc.

Robert B. Young of Young & Sherlock, Dover, Del., Thomas W. Brunner, Laura A. Foggan and Marilyn E. Kerst of Piper & Marbury, Washington, D.C., of counsel, for Ins. Environmental Litigation Ass'n (IELA).

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. INTRODUCTION

This action originated with a complaint filed by New Castle County (the "County") seeking a declaratory judgment against twelve insurance companies which had issued comprehensive general liability policies to the County. (Docket Item ["D.I."] 1.) The County requested a declaration that the insurance companies must defend and indemnify the County in claims relating to pollution emanating from two landfills utilized by the County. The insurance companies filed answers denying coverage for the claims and asserting affirmative defenses. (D.I. 6, 7, 10–14, 25, 28, 40.) Several insurers also filed counterclaims. The County ultimately settled its claims against four of the insurers.[1] (D.I. 45, 124, 148, 245.)

The remaining eight insurers who did not settle filed motions for summary judgment that they had no duty to defend or indemnify the County for claims resulting from the landfill.[2] (D.I. 110, 215, 217, 219, 222, 224, 225, 227.) Only two of the issues raised in the motions for summary judgment are now before the Court. The first is the meaning of the policies' pollution exclusion clause. Aetna, National Union, U.S. Liability, Home Insurance, and Continental Casualty assert the pollution exclusion clause as a ground for summary judgment. The second issue is the scope of the policies' provision restricting coverage to "sums which the insured shall become legally obligated to pay as damages." (D.I. 109A at 1.) The insurers argue that this provision precludes coverage for claims involving injunctive relief. Aetna, National Union, Home Insurance, Twin City, INA, U.S. Fire, and Continental Casualty put forth the "injunctive relief" issue as a ground for summary judgment. For reasons set out below, the Court rejects the arguments urged by the

insurers on both issues. Consequently, the Court will deny the insurers' motions for summary judgment on the two issues before the Court.

## II. Facts

This litigation involves two landfill sites used by the County. The Llangollen landfill opened in 1960 and reached capacity by the end of 1968. (D.I. 233 at 5.) The County then leased property at Tybouts Corner for use as a landfill. (D.I. 233A at 147.) The lease agreement with the owners provided that the owners would operate the Tybouts Corner landfill. (*Id.*) The County received a letter from the State Department of Natural Resources and Environmental Control ("DNREC") on May 18, 1972, stating that two wells near the Llangollen landfill were contaminated. (D.I. 109A at 66–67.) DNREC indicated that it thought that leachate from the Llangollen landfill was the most likely source of the contamination. (*Id.* at 66.) DNREC required the County to take four remedial actions, such as digging a ditch around the Llangollen landfill to intercept the leachate. (*Id.*)

Five lawsuits relating to the two landfills were subsequently filed against the County. (D.I. 109A at 173–180, 197–205, 273–334.) Two of the lawsuits were filed by Artesian Water Company, a neighboring Company which supplied a substantial amount of the drinking water for New Castle County. (*Id.* at 173, 273.) In a state court action, *Artesian Water Co. v. New Castle County*, C.A. No. 5106 (Del. Ch.Ct. filed June 9, 1976) ("Artesian I"), Artesian alleged that groundwater supplies in the Llangollen area had been contaminated by the escape and migration of polluting leachate from the Llangollen landfill. (*Id.* at 175–77.) Artesian sought injunctive relief as well as damages. (*Id.* at 179.) Artesian also filed an action in federal

1. The four insurers who settled were: Zurich Insurance Company, New Hampshire Insurance Company, Continental Insurance Company, and Hartford Accident and Indemnity Company.

2. The eight insurers moving for summary judgment are: Aetna Casualty and Surety Company,

National Union Fire Insurance Company, United States Liability Insurance Company, Home Insurance Company, Twin City Fire Insurance Company, Insurance Company of North America ("INA"), United States Fire Insurance Company, and Continental Casualty Company.

court seeking reimbursement under section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for costs incurred by Artesian in responding to the alleged release of hazardous substances from Llangollen. *Artesian Water Co. v. New Castle Co.*, C.A. No. 83–854 (D.Del. filed Dec. 8, 1983) ("Artesian II"). (D.I. 109A at 280–81.) The United States also filed an action seeking response costs and injunctive relief under section 107 of CERCLA, as well as alleging the County's liability under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973. *United States v. New Castle County*, C.A. No. 80–489 (D.Del. filed April 6, 1984) (D.I. 109A at 282).

Two individuals also brought actions. In *Wagner v. New Castle County*, C.A. No. 7008 (Del.Ch.Ct. filed Nov. 10, 1982), plaintiff sought damages and injunctive relief for contamination of the water on plaintiff's land by the County's Tybout Corner landfill. (D.I. 109A at 202–205.) The final action, *Andrews v. New Castle County*, C.A. No. 84–124 (D.Del. filed March 2, 1984), sought damages and injunctive relief for injury to the plaintiff allegedly caused by the discharge of pollutants from Tybouts Corner landfill into plaintiff's drinking water. (D.I. 109A at 302.) The County then filed this action against its insurers requesting a declaratory judgment that the insurers were obligated to defend and indemnify the County regarding the five above mentioned lawsuits and the remedial measures taken by the County pursuant to the DNREC letter. (D.I. 1.)

## III. ANALYSIS

### A. Pollution Exclusion Clause

The County's policies with five of the insurers [3] contained a provision known as a pollution exclusion clause. (D.I. 109A at 1;

D.I. 216 at A–1 to A–3; D.I. 218 at A–2; D.I. 220 at 30; D.I. 228A at 2.) The pollution exclusion clause stated that the policy generally did not cover damages caused by pollution.[4] However, the clause stated that the policy did cover pollution where the release, discharge or dispersal was "sudden and accidental." (D.I. 109A at 1.) The insurers argue that the word "sudden" is unambiguous and has a temporal meaning, such as an event that occurs quickly and not gradually. (D.I. 109 at 19–30.) The insurers assert that the contamination is due to a long term process of leachate migration, and therefore is not the type of sudden pollution which the policy would cover.

The County contends that the word "sudden" as used in the exclusion clause is ambiguous. (D.I. 233 at 31.) Furthermore, the County argues that where terms of an insurance policy are ambiguous, they must be construed in favor of the insured. (*Id.*)

Under Delaware law, an insurance policy is a contract of adhesion. *Hallowell v. State Farm Mutual Automobile Insurance Company*, 443 A.2d 925, 926 (Del. 1982). Consequently, an ambiguous term in an insurance contract is construed in favor of the insured and strictly against the insurer. *Id.; Steigler v. Insurance Company of North America*, 384 A.2d 398, 400 (Del. 1978). An ambiguity is created when the terms of a contract permit two or more reasonable interpretations. *Hallowell*, 443 A.2d at 926; *Cheseroni v. Nationwide Mutual Insurance Company*, 402 A.2d 1215, 1217 (Del.Super.1979).

The primary dictionary definition of the word "sudden" is "happening without previous notice" or "occurring unexpectedly." Webster's Third New International Dictionary, at 2284 (1971); *see* Black's Law Dic-

---

3. Aetna, National Union, U.S. Liability, Home Insurance, and Continental Casualty.

4. The pollution exclusion clause stated in full:
   It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.
   (D.I. 109A at 1.)

tionary, at 1284 (1979). While other definitions indicate that the word has connotations of brevity, this only suggests that the word has more than one reasonable definition. Each of the parties cites case law supporting their respective definition of the word "sudden" in a pollution exclusion clause. Several courts have found the word "sudden" to be unambiguous, and to exclude pollution that occurs gradually. *See, e.g., Great Lakes Container Corporation v. National Union Fire Insurance,* 727 F.2d 30 (1st Cir.1984); *Claussen v. Aetna Casualty & Surety Co.,* No. CVI 85–248 (S.D.Ga. Aug. 20, 1987); *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.,* 315 N.C. 688, 340 S.E.2d 374 (1986). The County cites as many or more cases holding that the term is ambiguous and should be construed in favor of the insured. *See, e.g., Cohen v. Erie Indemnity Co.,* 288 Pa.Super. 445, 432 A.2d 596 (1981); *Broadwell Realty Services, Inc. v. Fidelity & Casualty Company of New York,* 218 N.J.Super. 516, 528 A.2d 76 (1987); *Pepper's Steel & Alloys, Inc. v. U.S. Fidelity & Guaranty Co.,* 668 F.Supp. 1541 (D.Fla.1987); *Allstate Insurance Co. v. Klock Oil Co.,* 73 A.D.2d 486, 426 N.Y.S.2d 603 (1980). As none of the cases cited by the parties is binding, and there is clearly a split of authority, the Court finds that the case law on the issue is incapable of remedying the above noted ambiguity in the word "sudden."

Both the County and the insurers offer extrinsic evidence in support of their interpretations. The County contends that the development and implementation of the pollution exclusion is proof that it was meant to eliminate coverage only for intentional or expected pollution. (D.I. 233 at 34.) The County puts forth evidence showing the interpretation of the exclusion by the Insurance Rating Board ("IRB"), an insurance industry trade association. The County asserts that the IRB interpreted the pollution exclusion clause as a clarification of the "occurrence" provision, rather than

a restriction of coverage. The occurrence clause stipulates that coverage is only provided for accidents resulting in damages that are unexpected and unintended.[5] (D.I. 109A at 2.) The County contends that the IRB consistently presented the pollution exclusion clause to state insurance commissioners as merely a clarification.

The insurers respond by citing to comments and memoranda by IRB drafters of the exclusion clause and IRB staff members. (D.I. 301 at 12–19.) The insurers assert that this evidence confirms that the term "sudden" was intended to limit coverage to an abrupt or brief discharge of pollutants. For instance, the insurers quote the comments of a representative of the drafting committee which indicate that the exclusion was not meant to address the state of mind of the polluter. (*Id.* at 14.)

The drafting and marketing history of the pollution exclusion does not resolve the ambiguity inherent in the meaning of the word "sudden." If anything, the conflicting evidence cited by the parties supports the conclusion that there exists confusion over how the term should be interpreted. In addition, the materials referred to by the parties are not directly on point, as they do not discuss how the insurers marketed the exclusion specifically to the County or in the State of Delaware generally.

The insurers seek to bolster their argument by referring to other developments in insurance policies. (D.I. 109 at 27.) The insurers point to the development and marketing of "environmental impairment liability" (EIL) policies which provide coverage for non-sudden pollution. (*Id.* at 27, 28.) The insurers argue that if the word "sudden" means the same thing as "occurrence," there would be no commercial niche for EIL policies to fill. The Court finds that there is a different reason that an EIL policy would have its own niche. As the insurers admit, EIL policies are issued on a "claims made" basis. (*Id.*) Such policies

---

**5.** The policies covered only damages caused by an "occurrence." The policies defined an occurrence as: "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (D.I. 109A at 2.)

provide coverage for only those claims presented during the policy period. The claims may be based on occurrences which predate the policy period. The comprehensive general liability ("CGL") policies at issue here are different in that claims may be presented at any time. Some of the claims at issue in this case, for instance, were made years after the respective policies lapsed. However, under CGL policies the occurrence triggering the claim must have occurred within the policy period. (D.I. 109A at 1.)

■ The insurers look to the proceeding before the Delaware Chancery Court in *Artesian I* to support their characterization of the word "sudden." (D.I. 109 at 21.) In that case, the first of two brought by Artesian Water, the County sought sovereign immunity under a Delaware statute granting immunity from suit for pollution claims that are not the result of a sudden and accidental discharge of a pollutant. 10 *Del. C.* §§ 4011–12 (1982 Supp.). The County argued that the contamination of groundwater resulting from its landfills had not been sudden for purposes of the immunity statute. *Artesian Water Co.*, C.A. No. 5106 at 21. The Chancery Court agreed. *Id.* The County distinguishes *Artesian I* by noting that that case involved interpreting the word "sudden" under a statute, whereas the present proceeding involves interpretation of an insurance contract. (D.I. 233 at 48.) This Court agrees with the County. As noted above, interpretation of an insurance contract under Delaware law involves special rules of construction. *Hallowell*, 443 A.2d at 926. The Court finds that the Chancery Court's ruling is not controlling.

■ The insurers also contend that the County previously acknowledged that the pollution exclusion would foreclose coverage. (D.I. 109 at 22.) The insurers offer as evidence the statement by the County's Risk Manager that he was "certain the suit

[*Wagner v. New Castle County* ] [was] 'excluded' due to the pollution clause." (D.I. 109B at 206.) However, the Court finds this argument unpersuasive. The Risk Manager is a lay person and in addition he gives no explanation of how he reached his conclusion.

■ In summary, the Court holds that the plain meaning of the word "sudden" as used in the pollution exclusion is ambiguous. Resolving the ambiguity in favor of the insured, the Court rules that the term "sudden" means a discharge, dispersal, release or escape of pollutants that is unexpected.[6]

■ The Court notes that United States Liability Insurance Company issued policies to the County with significantly different pollution clauses. The Company's policies from May 11, 1973 to July 1, 1975, contained the same pollution exclusion clause discussed above. However, from July 1, 1975 to July 1, 1976, U.S. Liability issued a policy to the County which excluded coverage for all pollution related incidents. (D.I. 218 at A–6.) From July 1, 1976 to July 1, 1978, U.S. Liability's policy stated that pollution was not covered "*whether or not such discharge, dispersal, release or escape* is sudden and accidental." (*Id.* at A–7) (emphasis added). The County admits that there is no coverage under the clause used from 1976 to 1978. (D.I. 233 at 49.) In construing the clause used from 1975 to 1976, the only question is whether the injury alleged in the underlying claims resulted from pollution. As it is undisputed that the alleged injuries resulted from pollution, the Court will grant partial summary judgment in favor of U.S. Liability regarding its liability under policies it issued to the County from July 1, 1975 to July 1, 1978.

## B. Coverage For Injunctive Relief Claims

■ Five of the policies at issue contained a clause stating that the insurer

---

6. The County asserts two other arguments with regard to the pollution exclusion. The County contends that the IRB had marketed the exclusion as a clarification, and that the insurers are estopped from now taking a contradictory position. (D.I. 233 at 36.) The County also argues

that the exclusion is intended to preclude coverage only for "actual" polluters. (*Id.* at 37.) As the Court holds for the County on the ambiguity issue, it need not reach these two other arguments.

"will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage ... caused by an occurrence."[7] (D.I. 109A at 1; D.I. 220 at 22, 23; D.I. 224 at 3; D.I. 226 at 4; D.I. 228A at 2.) Two of the remaining policies, issued by National Union and Twin City, had language conceded to be substantially similar. (D.I. 216 at 6, A-1; D.I. 223 at 2, A-1.) The second issue before the Court is the scope of the word "damages" in the above provision.

The insurers argue that "damages" do not include claims for injunctive relief or for other equitable relief such as cleanup costs under CERCLA or RCRA. (D.I. 109 at 35; D.I. 220 at 22–23; D.I. 228 at 31.) Of the six underlying claims for which the County seeks coverage, the insurers argue that four of the claims are not for damages. (D.I. 300 at 20.) These four claims are: *Artesian I, Artesian II, United States v. New Castle County,* and the DNREC demand for remedial action at Llangollen landfill.[8]

To the extent that any of the policies defined the word "damages," the definitions given in the policies are of little help.[9] (D.I. 109A at A-2; D.I. 223 at 2; D.I. 226 at 2.) The insurers argue that there is no coverage when the underlying claim is for equitable relief, as such relief does not constitute damages under the policy. *See Aetna Casualty & Surety Co. v. Hanna,* 224 F.2d 499 (5th Cir.1955); *Haines v. St. Paul Fire & Marine Ins. Co.,* 428 F.Supp. 435 (D.Md.1977). Furthermore, the insurers argue that under *Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348 (4th Cir.1987), claims for reimbursement of cleanup costs incurred under CERCLA are not damages and hence are not covered. In *Armco,* the claim for reimbursement arose under CERCLA § 107(a). The court held that such an action was not for "damages" in the legal sense, but was for equitable relief. *Armco,* 822 F.2d at 1352. The court ruled that the word "damages" should be given a legal, technical meaning. *Id.*

This Court notes that under Delaware law, language in an insurance policy should be given its "ordinary, usual meaning" when possible. *Johnston v. Tally Ho, Inc.,* 303 A.2d 677, 679 (Del.Super.Ct.1973). As noted above, to the extent that language in a policy is ambiguous, it should be construed strongly against the insurer. *Hallowell,* 443 A.2d at 926. A court should interpret the language so as to adhere to the reasonable expectations of the insured. *Steigler,* 384 A.2d at 401. Under these rules of construction, this Court finds that the "legal, technical" interpretation of the word "damages" used by the *Armco* court is inappropriate under Delaware law. A dictionary definition of "damages" states that the word means: "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." Webster's Third New International Dictionary, at 571 (1971). Thus, an ordinary definition of the word "damages" makes no distinction between actions at law and actions in equity. The underlying lawsuits at issue would therefore be covered, as they involve costs that the County may become "legally obligated to pay" as a result of injuries sus-

---

7. The insurers with policies using the above language are Aetna, Home Insurance, INA, U.S. Fire and Continental Casualty.

8. Only Continental Casualty Company argues in its brief that the fifth claim, *Andrews v. New Castle County,* is an action solely for injunctive relief. The other insurers concede either explicitly or implicitly (by omission) that *Andrews* involves a claim for damages. (D.I. 220 at 22 n. 67; D.I. 109 at 37; D.I. 334 at 45.) As to the sixth claim, *Wagner v. New Castle County,* the Home Insurance Company conceded at oral argument that the *Wagner* claim seeks damages and consequently is not at issue with regard to

coverage for injunctive relief. (D.I. 334 at 45.) As the Home was arguing on behalf of all the insurers on this issue, and none of the insurers objected to the Home's treatment of the *Wagner* claim, the Court will assume that this is the position of all the insurers.

9. A representative definition in one of the policies stated: " 'damages' includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage." (D.I. 109A at 2.)

tained by the respective Plaintiffs or compensation imposed by law for a wrong.

This interpretation of the word "damages" finds support in cases that consider cleanup costs due to pollution. *See Continental Ins. v. Northeastern Pharmaceutical & Chemical*, 811 F.2d 1180 (8th Cir. 1987), *reh'g granted en banc sub nom. Continental Ins. v. Missouri*, 815 F.2d 51 (8th Cir.1987); *Port of Portland v. Water Quality Insurance Syndicate*, 796 F.2d 1188 (9th Cir.1986); *Consolidated Rail Corp. v. Certain Underwriters at Lloyds*, C.A. No. 84–2609 (E.D.Pa. June 3, 1986)[Available on WESTLAW, DCT database]; *Fireman's Fund Ins. Co. v. Ex-Cell-O Corp.*, 662 F.Supp. 71 (E.D.Mich. 1987); *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 654 F.Supp. 1334 (D.D.C.1986); *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*, 218 N.J.Super. 516, 528 A.2d 76 (1987); *United States Aviex v. Travelers Ins.*, 125 Mich.App. 579, 336 N.W.2d 838 (1983). These cases addressed claims resulting from a range of underlying legal situations, including a suit for CERCLA cleanup costs (*Continental Ins.*), a case where the EPA ordered a cleanup and threatened a CERCLA suit (*Ex-Cell-O Corp.*), and occurrences where the state environmental agency ordered a cleanup (*Consolidated Rail Corp., Aviex*).

The insurers also contend that a government suit for response costs under CERCLA is not covered by the policies because the government did not suffer "property damage." The insurers cite the Fourth Circuit decision in *Mraz v. Canadian Universal Ins. Co.* for support. 804 F.2d 1325 (4th Cir.1986). In *Mraz*, the court held that insurers need not indemnify the insured for a suit brought by federal and state government entities because the government entities suffered no property damage. The court found that the plaintiff's claim for cleanup costs was only a claim for an economic loss, and that the relevant policies did not cover economic losses.

This Court disagrees with the holding and reasoning of *Mraz*. To trigger cover-

age under the policies, the Federal Government in *United States v. New Castle County* need not allege that it suffered property damage. Under the terms of the policy, the underlying claim need only require the insured "to pay damages *because of* bodily injury or property damage." (D.I. 109A at 1) (emphasis added). The complaint in *United States v. New Castle County* clearly states claims for remedial action to remedy property damage, in this case harm to surface and ground waters. (D.I. 109B at 282–99.) The Court finds that all of the underlying lawsuits at issue are included within the policies' definition of damages.

■ A question remains regarding the funds expended by the County to comply with the actions required by DNREC. As the DNREC letter was prompted by contamination of a neighbor's well, it appears that there was an injury and an infringement of the neighbor's legal rights. The additional issue is whether the DNREC letter legally obligated the County to incur costs for remedial actions. While DNREC did not file or threaten to file a legal proceeding, DNREC did "require" the County to take specific actions. (D.I. 109B at 123.) Under *Del.Code Ann.* tit. 7, § 6309 (1986), DNREC had the power to commence a civil action to enforce corrective measures necessary to protect the environment. Since the required remedial actions were ultimately enforceable in a legal proceeding, they constituted sums that the County was legally obligated to pay as damages. Therefore, the Court holds that the insurers' duty to indemnify the County for damages includes money expended by the County to comply with the demand in the DNREC letter.

■ As the Court holds that insofar as the two issues now before it, the insurers have a duty to indemnify the County for the six underlying claims, the Court also concludes that regarding these two questions of law the insurers are obligated to defend the County in the five underlying lawsuits. Under Delaware Law an insurer's duty to defend under the policy is broader than its duty to indemnify.

*Charles E. Brohawn & Bros., Inc. v. Employers Commercial Union Insurance Co.*, 409 A.2d 1055 (Del.1979); *see also Continental Casualty Co. v. Alexis I. du Pont Sch. Dist.*, 317 A.2d 101 (Del.1974). The insurers are required to defend any action which potentially states a claim which is covered under the policy. *Charles E. Brohawn & Bros.*, 409 A.2d at 1055, 1058; *see also C.H. Heist Caribe Corp. v. American Home Assurance*, 640 F.2d 479, 483 (3d Cir.1981). Because the claims at issue fall within the insurers' duty to indemnify, they clearly fall within the insurers' duty to defend.

## IV. CONCLUSION

The word "sudden" in the policies' pollution exclusion clause is ambiguous. Under Delaware law, such an ambiguity in an insurance policy must be construed in favor of the insured. The policies' provision stating that the insurers will only pay "sums which the insured shall become legally obligated to pay as damages" must be given its ordinary meaning and should not be given a narrow, technical definition. Consequently, claims for injunctive relief, statutory response costs, or other required remedial actions enforceable in a legal proceeding come within that provision. All the insurers' motions for summary judgment will be denied except for the motion by United States Liability Insurance Company. U.S. Liability will be granted partial summary judgment for the three years (1975–1978) in which its policies included an absolute pollution exclusion.

Judgment will be entered in conformity with this Memorandum Opinion.