**UNITED STATES FIDELITY & GUARANTY COMPANY**

v.

**The MURRAY OHIO MANUFACTURING COMPANY.**

No. 3–84–1126.

United States District Court, M.D. Tennessee, Nashville Division.

June 30, 1988.

Lawrence E. Levine, Levine, Mattson, Orr & Young, Michael P. Mills, Brewer, Krause & Brooks, Nashville, Tenn., for plaintiff.

Jay S. Bowen, William W. Berry, Sr., Bass, Berry & Sims, Nashville, Tenn., J. Mark Tipps, for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Plaintiff, United States Fidelity & Guaranty Company ("USF & G"), seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that USF & G is not obligated under certain insurance policies purchased by defendant, the Murray Ohio Manufacturing Company ("Murray Ohio"), either to defend or to idemnify Murray Ohio regarding claims made against it in a lawsuit styled *United States v. Conservation Chemical Co.*, No. 82–093–CV–W–5 (W.D. Mo.) (the "CCC litigation"). Murray Ohio has counterclaimed, seeking the Court's declaration that it is entitled to a defense and indemnification from USF & G.

## FINDINGS OF FACT

The facts of this case are essentially undisputed. In the CCC litigation, which was instituted in 1983, the United States filed suit under both the Resource Conservation and Recovery Act (the "RCRA"), 42 U.S.C. § 6901, *et seq.*, and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, against Conservation Chemical Company ("CCC"), which owned and operated a hazardous waste site located in Kansas City, Missouri, and four individual companies that had contracted with CCC to dispose of certain hazardous waste that they generated. That suit sought injunctive relief to remedy an alleged endangerment to public health, welfare, or the environment due to the release or escape of hazardous waste at the CCC Kansas City site. The suit also requested recovery of "clean up" or "response" costs, including investigative costs and other expenses incurred by the federal government.

In June 1984, the four original generator defendants filed a third party complaint against Murray Ohio and numerous other alleged generators that had contracted with CCC, seeking contribution for all costs of any relief awarded the federal government in the original suit. The third party complaint alleges that because Murray Ohio arranged for the transportation, disposal, or treatment of solid or hazardous waste substances owned by it at the Kansas City dump site, it is liable to third party plaintiffs for reimbursement of all costs or for any relief granted against them in the CCC litigation.

The third party defendants, including Murray Ohio, believing the funds for cleanup would not exceed $15,000,000, agreed to pay that amount in settlement of the third party complaint. However, because the actual costs of cleanup exceeded $15,000,000, a second third party complaint was filed to recover from the third party defendants amounts paid to the United States in excess of $15,000,000. USF & G has refused to reimburse Murray Ohio for amounts Murray Ohio has spent in the defense and settlement of the CCC litigation.

The parties do not dispute that the events forming the basis of the claims against Murray Ohio in the CCC litigation occurred during the time when the policies in question were in effect. Murray Ohio hired CCC to pick up and deliver waste to the Kansas City disposal site for approximately six years, from December 29, 1972, to July 17, 1979. The parties agree that Murray Ohio reasonably believed CCC had a competent means to dispose of the industrial waste. Murray Ohio put the waste in drums, which then were transported by

CCC from the Murray Ohio plant to the disposal site in Kansas City. The wastes consisted of acid, nickel iron hydroxide, nickel sludge, nickel strip, nitrate, sodium nitrate, solid cyanide, spent chromic acid, spent chromic acid sludge, spent chromic acid nickel, and spent cyanide. The wastes are hazardous substances or contain hazardous substances within the meaning of CERLA, which was enacted in 1980. The parties further agree that Murray Ohio neither intended nor expected the disposal of its waste by CCC to cause damage, and that Murray Ohio had no knowledge of any faulty disposal practices by CCC.

Murray Ohio has paid $159,455, in settlement of the claims filed against it in the first third party complaint, and also has agreed to pay $269,588 in settlement of the claims filed against it in the second third party complaint. In addition, Murray Ohio has paid substantial attorney's fees in defense of the CCC litigation and in the instant case.

Murray Ohio held a series of comprehensive general liability insurance policies (collectively the "Policy") with USF & G from January 1, 1975 through January 1, 1985. The policy provision pertinent to this case provides that USF & G will pay

on behalf of the Insured [Murray Ohio] all sums which the Insured shall become legally obligated to pay as damages because of

A. bodily injury; or

B. property damage

to which this insurance applies, caused by an occurrence, and the Company [USF & G] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of this suit are groundless, false or fraudulent....

The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." The Policy defines "property damage" as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Additionally, the Policy contains a "pollution exclusion clause," stating that the insurance does not apply:

to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

The parties agree that at the time it contracted with USF & G for insurance coverage, Murray Ohio fully expected coverage for any claims against it for damages from pollution for any discharge, dispersal, release, or escape of waste materials that was "sudden and accidental," pursuant to the exception stated in the pollution exclusion clause. Relying on the Policy, Murray Ohio requested USF & G to defend and indemnify it from the claims asserted in the CCC litigation, but, as already noted, USF & G refused. Instead, USF & G filed this declaratory judgment action, alleging that the claim raised in the CCC litigation was not covered under the Policy. Oral argument was heard in this case on June 2, 1988.

## CONCLUSIONS OF LAW

As an initial matter, the Court determines that this controversy is appropriate for declaratory judgment. *See Grand Trunk Western R.R. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984). Tennessee law governs questions of the construction and interpretation of the Policy, as it was issued and delivered in Tennessee.

*See Hutchison v. Tennessee Farmer Mutual Insurance Co.*, 652 S.W.2d 904, 905 (Tenn.App.1983). Because Murray Ohio argues that resolution of the issue of USF & G's duty to indemnify does not necessarily resolve the issue of USF & G's duty to defend, the Court will address these questions separately.

### 1. *Duty to Indemnify*

Both parties agree that the question of whether USF & G must indemnify Murray Ohio in the CCC litigation turns on one or more of the following subissues:

a) Whether the relief sought by the United States under RCRA and CERCLA constitutes "damages" under the policy;

b) Whether the injury alleged by the United States under the RCRA and CERCLA constitutes "property damage" as defined under the Policy;

c) Whether the events underlying the CCC litigation constitute an "occurrence" as defined under the Policy, thus bringing Murray Ohio's actions under Policy coverage; and,

d) Whether the claims raised against Murray Ohio in the CCC litigation fall within the pollution exclusion clause, thus excluding the claims from coverage under the Policy.

The Court will assume, for purposes of argument only, that the relief sought by the government constitutes "damages," that the alleged injury constitutes "property damage," and that the underlying events constitute an "occurrence." The Court, nevertheless, concludes that, because the claims against Murray Ohio fall within the pollution exclusion clause, USF & G has no duty under the Policy to indemnify Murray Ohio for amounts paid in defense and settlement of the CCC litigation.

The above quoted clause excludes from coverage a class of injuries caused by pollution or contamination. However, an exception by this exclusion applies if the discharge, dispersal, release, or escape of pollutants or contaminants is "sudden and accidental." *See Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986). Thus, the clause excludes coverage only for damage caused by a gradual release, escape, discharge, or dispersal of irritants, contaminants, or pollutants. *Id.* 340 S.E.2d at 389.

Murray Ohio argues that the claims against it do not fall within the pollution exclusion clause because the hazardous waste contamination was "sudden and accidental," thus triggering the exception to the exclusion. Specifically, Murray Ohio contends that the term "sudden," when read in relation to the rest of the Policy, is ambiguous and in need of interpretive construction favoring the insured party. *See, e.g., New Castle County v. Hartford Accident and Indemnity Co.*, 673 F.Supp. 1359, 1362–64 (D.Del.1987); *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139 (W.D.Mich. 1988). Murray Ohio further urges the Court to reject the notion that the term "sudden" be given any temporal meaning in the sense of "quickly," but, rather, that it should be construed as meaning only "unexpected," "unforeseen," or "fortuitous." *See, e.g., New Castle County*, 673 F.Supp. at 1362–64. Arguing that this interpretation is entirely consistent with the common meaning of the word in everyday parlance, Murray Ohio concludes that the exclusion clause should be constructed broadly to provide liability coverage for all *unintended results* of an insured party's intentional acts, excluding coverage only for *intended results* of intentional acts. *See id.* at 1364.

The Court agrees with Murray Ohio that because exclusion clauses are to be strictly construed in a way most favorable to the insured, when an insurer denies coverage based upon such a clause the burden is upon the insurer to prove that the clause applies. *See Kern v. Transit Casualty Co.*, 207 F.Supp. 437, 440–41 (E.D.Tenn. 1962). The Court determines, however, that USF & G has met that burden. The Court is aware of the wide divergence of interpretations given by other jurisdictions to this standard pollution exclusion clause. *See Pepper's Steel and Alloys, Inc. v. United States Fidelity and Guaranty Co.*, 668 F.Supp. 1541, 1549 (S.D.Fla.1987) ("The

cases swim the reporters like fish in a lake."); Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo.L.J. 1237 (1986). Nevertheless, the Court finds no ambiguity in the exclusion clause or in the term "sudden." *See American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423, 1429 (D.Kan. 1987) ("The language is clear and plain, something only a lawyer's ingenuity could make ambiguous."); *Fischer & Porter Co. v. Liberty Mutual Insurance Co.*, 656 F.Supp. 132, 139 (E.D.Pa.1986) ("The pollution exclusion clause ... is not ambiguous."); *Waste Management*, 340 S.E.2d at 387 ("[I]t strains at logic" to perceive ambiguity in the clause); *accord, Great Lakes Container Corp. v. National Union Fire Insurance Co.*, 727 F.2d 30, 33 (1st Cir. 1984).

The common sense meaning in everyday parlance of the term "sudden" combines both the idea of "unexpected," and the idea of "quick." Because the Policy does not otherwise define "sudden," the Court is unwilling to read out of this word the temporal connotation that it possesses in its everyday use.

> It is the duty of the Court, where there is no ambiguity, to take the ordinary meaning of the words used, favoring neither party in their construction. Creation of ambiguity where none exists is not authorized by the rule requiring construction of the language of an insurance policy most strongly against the insurance company.

*Winecoff v. Nationwide Mutual Insurance Co.*, 223 Tenn. 267, 444 S.W.2d 84, 86–87 (1969).

Given the term's unambiguous meaning, the exclusion clause clearly is not a mere restatement of the definition of "occurrence," connoting only unexpected injury as Murray Ohio argues, but, rather, a contractual provision to limit the insured's coverage to accidents distinct in time and place. *See* Note, *supra* at 1242. Nor does this common sense reading of the term "sudden" make the Policy's pollution exclusion clause inconsistent with the Policy's definition of the term "occurrence," as con-tended by Murray Ohio. In light of that definition, the Policy provides generally for liability coverage for accidental injuries that were unexpected and unintended by the insured, including injuries from continuous or repeated exposure to conditions. However, the Policy further provides that if the injury is caused by the release of pollutants, then the coverage applies only if the release was sudden and accidental, that is, occurring both unexpectedly and relatively quickly in time. Nothing about the terms of this arrangement, which was freely entered into at arm's length, is inherently inconsistent.

■ Finally, Murray Ohio argues that public policy requires a construction of the Policy that favors the insured. Specifically, Murray Ohio argues that the primary public policy purpose for a pollution exclusion clause is to ensure that environmental standards are respected, by imposing the full risk of loss due to such property damage upon the commercial or industrial enterprise that actually does the polluting and by eliminating the "active polluter's" "option of spreading the risk through insurance coverage." *Autotronic Systems, Inc. v. Aetna Life and Casualty*, 89 A.D. 2d 401, 456 N.Y.S.2d 504, 505–506 (1982). Murray Ohio argues that if the insured is not an "active polluter," as the parties have stipulated that Murray Ohio is not, then no reason exists for using the exclusion clause to bar coverage for such injuries. *See Union Pacific Insurance Co. v. Van's Westlake Union, Inc.*, 34 Wash.App. 708, 664 P.2d 1262 (1983).

The Court, however, finds this public policy argument unpersuasive. The parties, in agreeing to the Policy terms, were not legislating with the intent to implement public policy, but, rather, were entering into a contract between private persons to set the allocation of risks and benefits for their mutual economic advantage. Having before it no proof that the Policy in any way offends the general welfare, the Court will not attempt to rewrite the common sense meaning of its terms in the name of public policy.

The proof in this case shows that Murray Ohio had its waste transported to and disposed of at the CCC site under contract for approximately six years. No breakdown in machinery, precipitous leak, or other "sudden" event occurred. The amended complaint filed by the United States in the CCC litigations speaks of long periods of time over which the pollution occurred, as opposed to any instantaneous event or events which occurred over a brief period. Thus, applying the pollution exclusion clause's "sudden and accidental" exception to these facts leaves no room for ambiguity. Simply put, an event that occurs over the course of six years logically cannot be said to be "sudden." *See, e.g., City of Milwaukee v. Allied Smelting Corp.*, 117 Wis.2d 377, 344 N.W.2d 523 (App.1983) (discharge of acid into city sewer occurring over a two to ten year period could not have been "sudden and accidental" under the general liability policy language); *Techalloy Co. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984) (regular or sporadic discharge of hazardous chemicals over 25 year period was not a sudden event).

In sum, although Murray Ohio may not have intended it, the harm was the result of the "discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water." Under the pollution exclusion clause, injuries of this nature are not covered under the Policy.

### 2. *Duty to Defend*

■ Murray Ohio further claims that even if the Court determines that USF & G does not have a duty to indemnify, that determination will not preclude a finding of a duty to defend, which is distinct from and broader than its duty to indemnity. *See Pepper's Steel & Alloys*, 668 F.Supp. at 1545. Murray Ohio argues that USF & G can escape its duty to defend Murray Ohio in the CCC litigation only if this Court finds that the complaint against Murray Ohio states no cause of action that even

potentially or arguably falls within the coverage of the Policy.

Under the Policy, USF & G has the duty to defend "any suit ... seeking damages on account of ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent." Under Tennessee law, an insurance company's obligation to defend its insured is determined solely by "the allegations in the complaint or pleading asserting a claim against the insured." *Bituminous Fire and Marine Ins. Co. v. Izzy Rosen's Inc.*, 493 F.2d 257, 263 (6th Cir.1974). The obligation to defend arises whenever the complaint against the insured alleges a claim upon any ground for which there might be a recovery within the terms of a policy. *American Indemnity Co. v. Sears, Roebuck & Co.*, 195 F.2d 353, 356 (6th Cir.1952). Further, "where the allegations of the complaint against the insured are ambiguous or incomplete and it is doubtful whether or not they state a cause of action *within the coverage of the policy* sufficient to compel the insurer to defend such doubt will be resolved in favor of the insured." *Dempster Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 54 Tenn.App. 65, 388 S.W.2d 153, 156 (1964) (emphasis added). The purpose of such duty to defend provisions is for the insured to obtain protection against the expense of defending suits, whether meritorious or groundless, *within the area and scope of liability covered by the policy. Id.* 388 S.W.2d at 155.

Having reviewed both the allegations contained in the complaint against Murray Ohio concerning long term pollution, and the Policy's duty to defend provision, the Court finds no such duty to defend Murray Ohio on the part of USF & G in the CCC litigation. As stated earlier, the Court will assume, for the sake of argument only, that the relief sought against Murray Ohio constitutes "damages" for "property damage" stemming from an "occurrence." Nevertheless, because the waste leakage alleged to have occurred over a six year period could not be termed "sudden," the unambiguous language of the Policy's pollution exclusion clause clearly takes the government's cause of action outside the

scope of liability as agreed upon by the parties. The Court recognizes that its determination that the pollution exclusion clause applies is made with the benefit of hindsight years after the government's complaint was filed. The Court, nevertheless, finds that USF & G's reliance on the unambiguous language of the clause in deciding initially not to defend Murray Ohio was both reasonable and proper at that time.

In sum, the Court DECLARES that under the terms of the Policy, USF & G is not obligated either to defend or to indemnify Murray Ohio in connection with claims that have been brought against it in the CCC litigation.

## SUMMARY

The plaintiff, United States Fidelity & Guaranty Company ("USF & G") seeks a declaratory judgment that it is not obligated under certain insurance policies (collectively the "Policy") purchased by the defendant Murray Ohio Manufacturing Company ("Murray Ohio") either to defend or to indemnify the manufacturing company regarding claims against it in a lawsuit brought by the federal government (the "CCC litigation") concerning the leakage of hazardous waste generated in its manufacturing process. The defendant counterclaims, seeking a declaration that it is entitled to be defended and indemnified by the plaintiff. The Court DECLARES that under the terms of the Policy, and in light of the government's allegations, USF & G is not obligated either to defend or to indemnify Murray Ohio in connection with the claims that have been brought against Murray Ohio in the CCC litigation.

An Order will be entered simultaneously with this Memorandum.