875 F.2d 868
 29 ERC 1700, 19 Envtl. L. Rep. 20,966
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES FIDELITY & GUARANTY INSURANCE CO., Plaintiff-Appellee,
v.
The MURRAY OHIO MANUFACTURING COMPANY, Defendant-Appellant.
 No. 88-5815.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and JOHN D. HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant The Murray Ohio Manufacturing Company ("Murray") appeals from a declaratory judgment entered by the district court in favor of plaintiff-appellee United States Fidelity & Guaranty Insurance Company ("USF & G") wherein the court declared that USF & G had no duty to indemnify nor defend Murray under certain insurance policies purchased by Murray. For the reasons that follow, we affirm.
 
 I.
 
 2
 The facts of this case are essentially undisputed. From December 19, 1972, through July 17, 1979, Murray hired Conservation Chemical Company ("CCC") to pick up waste products generated by Murray's facilities and transport them to a Kansas City disposal site operated by CCC. These wastes were by-products of Murray's manufacturing processes.
 
 
 3
 In 1983, the United States filed an action against CCC and six other defendants in the United States District Court for the Western District of Missouri pursuant to section 703 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Sec. 6973, and section 106 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9606, for injunctive relief to remedy the danger to health in the environment at the Kansas City disposal site ("the CCC litigation").
 
 
 4
 In June 1984, the original defendants filed a third-party complaint against some 147 other corporations whose waste products were treated or disposed of at the Kansas City site. Murray was named as a third-party defendant in that action. The third-party complaint sought to make the third-party defendants, including Murray, jointly and severally liable, or in the alternative, proportionately liable for any injunctive or remedial relief ordered in the original action. A "compromise and settlement agreement" was worked out in the CCC litigation whereby Murray and others would contribute certain sums to the amount determined necessary to clean up the site. However, after this agreement was reached, it was determined that the initial monetary amount thought adequate to clean up the site was too low. The original defendants renewed their third-party complaint against the third-party defendants, including Murray, and a second third-party complaint was filed. The relief sought by the second third-party complaint is essentially the same as that sought in the first third-party complaint.
 
 
 5
 On September 25, 1984, Murray notified its insurer, USF & G, that Murray had become a third-party defendant in the CCC litigation and made demand upon USF & G to defend and indemnify it in that action under a series of general liability insurance policies Murray held with USF & G from January 1, 1975, through January 1, 1985. The parties do not dispute that the events which formed the basis of the claims against Murray in the CCC litigation occurred during the time when a policy issued by USF & G was in effect. However, USF & G declined to indemnify or defend Murray, contending that the claims raised in the CCC litigation were not covered under its general liability policies.
 
 
 6
 The pertinent language of USF & G's policies is as follows:
 
 COVERAGE B--PROPERTY DAMAGE LIABILITY
 
 7
 The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
 
 
 8
 a. Bodily injury or
 
 
 9
 b. Property damage
 
 
 10
 to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.
 
 
 11
 The policies also contained the following relevant exclusions:
 
 Exclusions
 This policy does not apply:
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course of body of water; but this exclusion does not apply if such discharge, dispersal, release, or escape is sudden and accidental.
 
 
 15
 (emphasis supplied). The following definitions apply to policy language:
 
 
 16
 "Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
 
 Property damages means:
 
 17
 (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
 
 
 18
 (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 19
 On October 25, 1984, USF & G filed this declaratory judgment action in the district court, pursuant to 28 U.S.C. Secs. 2201-02, seeking a declaration that it was not obligated under its general liability policies either to defend or indemnify Murray regarding the claims raised in the CCC litigation. On December 14, 1984, Murray counterclaimed, seeking a declaration that it was entitled to a defense and indemnification from USF & G. On June 2, 1988, the parties tried the case on written stipulations of fact before the district court, there being no disputed issues of fact for resolution at trial.
 
 
 20
 On June 30, 1988, the district court held that USF & G was not obligated either to defend or to indemnify Murray concerning the claims in the CCC litigation. United States Fidelity & Guaranty Co. v. The Murray Ohio Mfg. Co., 693 F.Supp. 617, 623 (M.D.Tenn.1988). The district court concluded that the pollution exclusion clause in the policy was controlling and, therefore, found it unnecessary to address the other issues questioning coverage. Id. The district court also held that there was no duty for USF & G to defend Murray in the CCC litigation. Id. at 622-23. This timely appeal followed.
 
 II.
 
 21
 Murray contends that the district court erred in concluding that the CCC litigation did not involve a sudden and accidental discharge or dispersal of pollution that is exempted from the general pollution exclusion clause in the policies. Murray contends that the policy language set out above is ambiguous and that the term "sudden" should be defined as "unexpected." In essence, Murray argues that a discharge or dispersal of waste that is unexpected, accidental, and unintended is covered by USF & G's policies. The district court disagreed, holding that the policy language in question was unambiguous and that "[t]he common sense meaning in everyday parlance of the term 'sudden' combines both the idea of 'unexpected,' and the idea of 'quick.' " Id. at 621. The court concluded that "the exclusion clause clearly is not a mere restatement of the definition of 'occurrence,' connoting only unexpected injury as Murray Ohio argues, but, rather, a contractual provision to limit the insured's coverage to accidents distinct in time and place." Id.
 
 
 22
 In an opinion rendered subsequent to the district court's judgment in this action, we construed the exact same language at issue in this appeal and reached the same conclusion as the district court in this action. United States Fidelity & Guaranty Co. v. Star Fire Coals, Inc., 856 F.2d 31 (6th Cir.1988). In Star Fire, we held that the policy language is unambiguous and that
 
 
 23
 the everyday meaning of the term "sudden" is exactly what this clause means. We do not believe that it is possible to define "sudden" without reference to a temporal element that joins together conceptually the immediate and the unexpected.... We believe that the phrase "sudden and accidental" is not a synonym for "unexpected and unintended," and that it should not be defined by reference to whether the accident or damages were expected.
 
 
 24
 Id. at 34; accord, Borden, Inc. v. Affiliated FM Ins. Co., 682 F.Supp. 927, 930 (S.D.Ohio 1987), aff'd, --- F.2d ---- (6th Cir.1989) (unpublished opinion). Thus, Murray's contentions have previously been rejected by this court when construing the policy language in question under Kentucky law.
 
 
 25
 Finding no principal distinction between the law of Tennessee and that of Kentucky with regard to the alleged duty to indemnify, this court's holding in Star Fire must be applied and the district court's decision on the issue affirmed. We further hold that the district court was correct in its conclusion that USF & G was not obligated to defend Murray in the CCC litigation. Under Tennessee law, an insurance company's obligation to defend its insured, which "is determined by the allegations in the complaint or pleading asserting a claim against the insured," Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's Inc., 493 F.2d 257, 263 (6th Cir.1974), arises whenever the complaint against the insured alleges a claim which potentially falls within the coverage of the insured's policy, even if the allegations have no merit. See Dempster Bros., Inc. v. United States Fidelity & Guar. Co., 54 Tenn.App. 65, ---, 388 S.W.2d 153, 155-56 (1964); see also American Indem. Co. v. Sears, Roebuck & Co., 195 F.2d 353, 356 (6th Cir.1952).
 
 
 26
 In our view, assuming that the claim in question is for damages, a waste leakage resulting from the inadequate storage of waste that is alleged to have occurred from December 29, 1972, through July 17, 1979, cannot, under any reasonable interpretation, be deemed a "sudden" discharge or release. As there is no possibility of coverage, the district court was correct in holding that USF & G had no duty to defend.
 
 III.
 
 27
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation