SOUTH KNOXVILLE BRICK COMPANY *v.* EMPIRE STATE
SURETY COMPANY.

(*Knoxville.*   September Term, 1912.)

1. **EMPLOYER'S LIABILITY INSURANCE.** Tramway is not a railroad in sense of application for policy stating that assured did not operate a "railroad".

A tramway upon which small cars were operated to haul dirt up from the pits to the plaintiff's brick-making machinery, which cars were run by gravity, except for a short distance, where cables were sometimes used, did not constitute the operation of a "railroad," within the meaning of an application for an employer's liability policy, which stated that the assured did not operate a railroad on its premises.   (*Post, p.* 406.)

2. **SAME.** Same. Such tramway is not incuded in words "draught or driving animal or vehicle".

The tramway described in the preceding headnote would not be included in the provision of the policy therein described, exempting the insuring company from liability for accidents "caused by any draught or driving animal or vehicle, or any person in charge thereof."   (*Post, p.* 406.)

3. **SAME.** Construction of policy rendering insuring company liable for counsel fees and expenses in assured's successful defense against an action for an accident.

Under an employer's liability policy providing that, if an action is thereafter brought against the assured to enforce a claim for damages for an accident covered by the policy, the assured shall immediately forward to the insuring company's office every summons or other process served upon him, and that the insuring company will, at its own cost, defend such suit on behalf of the assured, unless it elects to settle the same, or to pay the assured the maximum indemnity provided by the policy, it was *held* that if the insuring company

Brick Co. v. Surety Co.

refused to defend an action against the assured for personal injuries to an employee, and refused to pay the said indemnity so provided for in the policy, it is liable to the assured for the necessary costs, expenses, and counsel fees incurred by the assured in a successful defense against such action. (*Post*, *pp*. 407-409.

4. **SAME.  Provisions binding insurer to defend "any suit" against assured covered by policy does not limit insurer's liability to meritorious suits.**

A provision in an employer's liability policy, binding the insuring company to defend "any suit brought against the assured to enforce a claim for damages on an account of an accident covered by this policy," did not limit the insuring company's liability to meritorious claims, and such company could not defeat the assured's action for his necessary expenses and counsel fees incurred by him in successfully defending an employee's action for personal injuries, upon the ground that the employee's said action was without merit. (*Post*, *pp*. 409, 410.)

5. **SAME.  Insurer cannot by limiting liability to actual losses paid after judgment avoid liability for necessary expenses and counsel fees incurred by assured in successful defense of suit covered by policy.**

Where an employer's liability policy provides that, "No action shall lie against the company to recover for any loss under this policy, unless it shall be brought by the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue," this provision, when read in connection with other provisions, refers to losses sustained under suits, the defense of which had been undertaken by the insuring company; and the insuring company is not released from liability by reason of such provision, and the assured may recover from such company the necessary expenses and counsel fees incurred by him in his successful defense to a suit for an accident covered by the policy, where such company breached its contract in refusing to defend such suit. (*Post*, *pp*. 410-414.)

Brick Co. v. Surety Co.

Case cited and approved:  St. Louis Dressed Beef & Packing Co.
v. Maryland Casualty Co., 201 U. S., 173.

### FROM KNOX.

Appeal from the Chancery Court of Knox County to
the Court of Civil Appeals, and by *certiorari* from the
Court of Civil Appeals to the Supreme Court.—WILL D.
WRIGHT, Chancellor.

SHIELDS, CATES & MOUNTCASTLE and TEMPLETON &
CLEMENTS, for complainant.

EVERETT MOSES, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The South Knoxville Brick Company, hereinafter
called the assured, several years ago took out an in-
demnity policy with the Empire State Surety Company,
hereinafter called the company.  Under this policy, the
company agreed, subject to certain conditions, to in-
demnify the assured against loss arising from claims
for personal injuries received by others than its em-
ployees on the premises of the assured.

The assured owned and operated a brickyard in the
city of Knoxville; its premises consisting of about ten
acres of ground, on which were pits, tramways, ma-
chinery, and other usual equipment of such concerns.

During the life of this policy, a young boy named Arle Johnson was killed as the result of an accident on assured's place, and his father qualified as administrator and brought suit against the assured. Assured gave due and timely notice of this accident, and also, of the suit, to the company; but the company refused to assume any responsibility on account of this claim and denied any liability therefor. Whereupon the assured employed two attorneys of Knoxville, and later employed a third attorney, a young man, to assist in getting up the evidence, and went into trial of the case. Upon the trial, after the plaintiff's proof was introduced, attorneys for the assured made a motion for peremptory instructions against the plaintiff. This motion was granted. The case was taken to the court of civil appeals, where the judgment of the lower court was affirmed, and, upon *certiorari,* this court affirmed the judgment of the court of civil appeals.

For their services in this case, assured had to pay $300 each to its principal attorneys and $100 to the attorney who was employed to assist in getting up the proof. Assured also had to pay some $24 court costs.

After the termination of this litigation, assured made demand on the company to reimburse it for these expenses, which demand was refused by the company, and this suit is brought by the assured to recover of the conmpany $724, the amount expended by assured in the defense of the suit heretofore referred to.

This recovery is resisted by the defendant company

upon several grounds, which will be noted and disposed of *seriatim.*

The first defense interposed is that the company is released by reason of false representations or warranties made to it by assured, upon the faith of which the policy was issued. In the application for a policy, it is stated by assured that it does not operate a railroad, and furthermore there is a condition of the policy that it does not cover any accident "caused by any draught or driving animal or vehicle, or any person in charge thereof."

It appears from the record that on the premises of the assured is a tramway upon which small cars are operated to haul dirt up from the pits to the brickmaking machinery. It was by one of these cars, as we understand the record, that young Johnson was killed. The cars are run by gravity, except for a short distance, where sometimes cables are attached to them to assist in pulling them.

It was insisted by the company that this tramway was a railroad in the sense of the policy, and that it was accordingly released from any liability.

Neither of the lower courts treated this contention seriously, nor do we think there was any reason why they should have done so. The operation of this sort of an outfit, by no fair construction, could be referred to as the operation of a railroad, within the usual meaning of that language. Neither was this outfit included within that portion of the policy which exempted the company from loss caused by any draught or driving animal or vehicle.

Furthermore, it appears from the proof that tramways such as this one are usual and customary in brickyards, and it further appears that these premises were known and familiar to the agents of the company who wrote this policy; that they had paid one claim arising there, and had examined the premises, and had never made any suggestion that the operation of this tramway was inconsistent with the terms of this policy.

To properly consider other defenses made by the company, it becomes necessary to set out certain portions of the policy, as follows:

Condition A: "The company's liability for loss from an accident resulting in bodily injury to, or in the death of, one person is limited to $5000, and, subject to the same limit for each person, the company's total liability for loss for any one accident resulting in bodily injury to or in the death of more than one person is limited to $10,000."

Condition D: "If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company's home office every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on behalf of the assured, unless the company shall elect to settle same or pay the assured the indemnity provided for in condition A hereof."

Under the language set out in condition D, just quoted, the company obligates itself to do one of three

things upon due notice of suit brought against assured to enforce a claim for damages on account of an accident covered by the policy:

(1) To defend such suit at its own cost; or (2) settle same; or (3) pay the assured the indemnity provided in condition A. This indemnity is stipulated to be $5000 for an accident resulting in bodily injury to or in the death of one person. Upon investigation of a properly reported accident covered by the policy, the company might have, as agreed in condition D, paid assured the indemnity of $5000, provided in condition A, and have thereby become released from further liability, or the company might have settled the claim or undertaken the defense of the suit at its own cost.

When it refused to do any of these things, the company breached its contract of insurance, and became liable to the assured for the legal consequences of this breach.

It was probably the duty of the assured, by way of reducing its damages, to employ counsel and defend this suit. The company received the benefit of the defense to the Johnson suit made by the assured, and inasmuch as it declined to undertake this defense itself, and declined to pay the indemnity provided for in condition A, it has no room for complaint that assured now seeks to recover these necessary expenses.

If, instead of making this defense, assured had let judgment go against it by default, the company would no doubt have very severely reprehended such conduct, and have insisted that assured was not entitled to re-

cover full damages, which it made no effort to escape or mitigate. This defense would doubtless have been well taken.

We are of opinion that the course taken by the assured, under the circumstances heretofore detailed, was proper, and that the expenses incurred by it in such defense are damages naturally resulting from the company's breach of its contract, and are therefore properly recoverable in this suit.

It is further insisted, in behalf of the company, that this suit was groundless, and that such groundless claims are not properly included within the terms of the policy, and that the company is not liable for any damage or expense incurred in the defense thereof.

There is no basis for this contention to be found in the language of condition D, in which the company defines its obligations with respect to suits brought against the assured. The undertaking to defend, settle, or indemnify, there assumed, applies in terms to "any suit" "brought against the assured to enforce a claim on account of an accident covered by this policy." There is no limitation of liability to include only meritorious claims. This, perhaps, is a sufficient answer to the contention here made.

We may say, further, however, that this company cannot be permitted to declare in advance of trial that a suit is groundless, and therefore without the policy. To so hold would leave the assured helpless. The courts might reach a different conclusion from the company, and render judgment against the assured, and yet, upon

the reasoning of counsel, assured would be without redress on its policy, because, in the company's opinion, the suit was without merit.

Under its contract, if the accident upon which the suit was based was one of those described in the policy, it was the company's duty to undertake the defense or indemnify assured. Only the courts can determine whether a particular suit is groundless. This suit was not groundless, according to the averments of the declaration. If no defense had been made, there would have been a judgment by default, and the case submitted to a jury to assess damages. The company could not have escaped liability for this judgment on the theory that it was based upon a groundless claim.

Having failed, upon notice of the accident, to pay the assured the indemnity provided in condition A, it was the duty of the company to have settled the claim, or undertaken this defense, and shown that it was groundless upon the trial; or, having failed to do this, it is its duty to reimburse the assured for the expenses of this showing made by it for the company's benefit.

It is finally contended for the company that it is released from liability by reason of the provisions of condition F of the policy, as follows:

Condition F: "No action shall lie against the company to recover for any loss under this policy, unless it shall be brought by the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue; nor unless such action is brought within ninety (90) days after such

judgment, by a court of last resort, against the assured, has been so paid and satisfied. The company does not prejudice by this condition any defenses to such action which it may be entitled to make under this policy."

When read in connection with the other portions of the policy, we conclude that this condition must refer to losses sustained under suits, the defense of which had been undertaken by the company. Such were the character of losses in contemplation of the parties. Assured could not have supposed that the company would breach its contract in the outset, and occasion a loss by refusing to assume responsibility for a suit based upon a claim covered by the policy. The company could not have intended, as a consequence of its own default, to make this default the occasion for the imposition of a new condition upon assured. The parties were not contracting with reference to an initial breach by either, and this condition evidently refers to losses under suits defended, as provided in the policy, by the company, and not to losses under suits for which the company repudiated its liability.

This is the construction placed upon an identical condition in a similar policy, by the Supreme Court of the United States, and its reasoning is so apt and conclusive we adopt it here as a satisfactory disposition of the contention here made.

In the case referred to, the assured, upon the refusal of the indemnity company to undertake the defense, or have anything to do with the suit brought, had compromised the claim and brought its suit to recover the

amount paid out in settlement. Such a recovery was allowed by the Supreme Court, and, in referring to the clause of the policy containing the language here embodied in condition F, that court said:

"But there is another aspect of the eighth condition of the slip which requires a few words more. It is said that this condition expressly contemplates a breach of contract by the company and defines the plaintiff's rights in that case. The words 'no action shall lie against the company as respects any loss under this policy, unless,' etc., certainly do contemplate a case in court in which the company may turn out to be in the wrong, and therefore technically guilty of a breach of contract. But, notwithstanding the contrary suggestion in *Sanders* v. *Frankfort Marine, Accident & Plate Glass Ins. Co.,* 72 N. H., 485, 498, 499, 57 Atl., 655, 101 Am. St. Rep., 688, we think that the only breach which that condition has in view is a refusal by the company to pay after the decision of a case of which it has taken charge, when, notwithstanding the judgment, it conceives itself to have a defense. The action referred to is an action for money alleged to be due under the policy. Contracts rarely provide in detail for their nonperformance. It would be stretching the words quoted to a significance equally hurtful to both parties, and probably equally absent from the minds of both, to read them as having within their scope an initial repudiation of liability by the defendant, and a requirement that, in that event, the plaintiff should be bound to try the case against itself, although it should be plain that by a com-

promise it could reduce its claim on the defendant, as well as its own loss.

"If there is anything in the doubt whether the defendant, by assuming the defense of the original suit, would not lose its right to deny that the policy applied, even if it purported to save that right, it does not change our opinion. The requirement of a trial and judgment would not accomplish the object suggested, to make collusion impossible. The objections to thus hampering the *dominus litis* have thus been touched upon, and there would be presented the anomaly, if not the monstrosity, of a party attempting to provide by contract that, if he should do what, by general principles of contract, forfeited his right to make further requirements of the other side, his conduct, on the contrary, should impose new obligations on the other side. If the defendant kept its contract, it would defend the suit, and the plaintiff would have no duties. If it refused to do as it had promised, we cannot think that it was entitled to complain that the plaintiff did not do it, when the interest of both was the other way. Before a policy should be construed to have such an extraordinary effect, honesty requires that the assured should have been notified of his duties in unmistakable words." *St. Louis Dressed Beef & P. Co.* v. *Maryland Casualty Co.,* 201 U. S., 173, 26 Sup. Ct., 400, 50 L. Ed., 712.

If, notwithstanding the provisions in a policy, such as are contained in condition F, the assured may recover the amount expended by him in the compromise of a suit, surely he may recover counsel fees expended

by him in successfully defending such a suit to a court of last resort.

Other contentions made in behalf of defendant company are fully disposed of in the opinion of the court of civil appeals, and need not be noticed here. There is no suggestion that there was any fraud or collusion in the bringing or defense of the original Johnson suit, and it is not insisted that the fees demanded by counsel for the assured in that case were not altogether reasonable.

The judgment of the court of civil appeals, from which this case comes upon *certiorari,* will be affirmed.