DEMPSTER BROTHERS, INC., Plaintiff in Error, v.
UNITED STATES FIDELITY & GUARANTY
COMPANY, Defendant in Error.
—388 S.W.(2d) 153.

Eastern Section. November 20, 1964.

Certiorari Denied by Supreme Court March 2, 1965.

66

Anderson & Snepp, Knoxville, for plaintiff in error.

Hodges, Doughty & Carson, Knoxville, for defendant in error.

McAMIS, P. J. Dempster Brothers, Incorporated, appeals from a judgment dismissing its suit against United States Fidelity & Guaranty Company for the recovery of attorney's fees and costs totaling $9,048.32 which it incurred in the defense of two death claims instituted against it in the State of Florida. The Circuit

Judge, sitting without a jury, filed a Memorandum Opinion in which he followed First National Bank in Bristol v. South Carolina Ins. Co., 207 Tenn. 520, 341 S.W.(2d) 569, to hold that the insurer's duty to defend was dependent upon whether the complaints in the Florida suits showed upon their face a state of facts obligating it to defend and that the two complaints failed to allege such facts.

The two Florida actions against Dempster grew out of the fall of an airplane owned by N. M. Ulsch & Sons, Incorporated, Dempster's distributor in the State of Florida, during an attempted flight from Jacksonville, Florida, to Knoxville, Tennessee.

Ulsch & Sons had sold certain Dempster equipment to Waste Control of Florida and the purpose of the flight was to enable Waste Control to take delivery of the equipment at the Dempster plant in Knoxville. John Flether, President of Waste Control, and Earl Taylor, one of its employees, were aboard the plane. Both were killed in the crash and their respective personal representatives brought actions in the state court at Jacksonville against Dempster, Ulsch and the estate of Harold W. Ivens, an employee of Ulsch, who was the pilot on the trip. Both actions were based upon alleged negligent operation of the plane.

At the time of the crash, Dempster held what is titled a "Comprehensive General—Automobile Liability Policy" in the defendant United States Fidelity & Guaranty Company, which under certain conditions, obligated it to pay on behalf of Dempster all sums for which Dempster should become liable for personal injuries or death caused by accident and to defend actions brought to enforce such liability. When notified of the Florida actions,

U. S. F. & G. Co. declined to defend, at first, upon the ground that actions growing out of the airplane accidents were excluded and, later, upon the ground that the complaints in the Florida suits failed to allege that Ulsch stood in the relation of an independent contractor to Dempster, invoking in its special plea the following exclusion:

"The policy does not apply:

"(U)nder Coverages A and C, except with respect to operations performed by independent contractors and except with respect to liability assumed by the Insured under a contract as defined herein, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft * * * or (2) aircraft."

The Circuit Judge held inept the exclusionary reference to "aircraft" and we do not understand that defendant now seeks to avoid liability on the ground that injuries growing out of airplane accidents are per se excluded. Its present insistence is that the Florida complaints failed to allege that Ulsch was an independent contractor of Dempster and that, regardless of the actual facts, in the absence of such allegation, it was under no duty to defend, but if, contrary to its insistence, the court in determining its contractual duty, can go behind the allegations of the complaints Ulsch, in fact, was not an independent contractor for Dempster but a vendee of the equipment which Dempster manufactured and sold.

As we read the opinion in First National Bank in Bristol v. South Carolina Ins. Co., 207 Tenn. 520, 341 S.W.(2d) 569, supra, the policy of insurance was one insuring against liability arising out of the operation of an automobile. It expressly excluded from coverage

actions against the insured by his employees. An examination of the transcript reveals that the declaration in the case which the insurer declined to defend was predicated on the charge that the plaintiff was a minor illegally employed by the insured and that such employment in violation of law was the proximate cause of the plaintiff's injuries. The action was not based upon the negligent operation of the automobile covered by the policy. As pointed out in the opinion, it thus clearly appeared that the action was within the policy exclusion. The cases of South Knoxville Buick Co. v. Empire State Surety Co., 126 Tenn. 402, 150 S.W. 92; Fulton Co. v. Mass. Bonding & Ins. Co., 138 Tenn. 278, 197 S.W. 866; American Indemnity Co. v. Sears, etc., Co., 6 Cir., 195 F.(2d) 353 and Clinchfield R. Co. v. United States Fidelity & G. Co., D.C., 160 F.Supp. 337, cited in the opinion, can not be said to stand for the rule that the allegations of the complaint in all cases and under all circumstances conclusively govern the duty to defend.

In American Indemnity Co. v. Sears, etc. the Court expressly stated that it could assume *"without decision"* that the allegations of the complaint control. Since none of these cases held the allegations of the complaint controlling in all cases and the action under consideration was based upon illegal employment, a field of liability entirely outside the scope of the policy, we cannot believe the Supreme Court intended to lay down the rule that the allegations of the complaint are, under all circumstances, to control the duty to defend.

Generally, as in this case, the policy contains a separate provision requiring the insurer to defend actions within the coverage even though groundless. It may be that the general rule, referred to by the Circuit Judge,

that the allegations of the complaint control the duty to defend originated from cases where the allegations of the complaint brought the action within the coverage and the insurer, rather than the insured, sought to go behind the complaint and show that, in fact, the basis of the suit was beyond the scope of the policy. To permit the *insurer* to go behind the allegations of the complaint would tend to relieve the insurer of the duty of defending groundless actions in derogation of the duty imposed by the policy.

To apply the same rule to the insured would seem to violate the principle that in construing and applying insurance policies the apparent object and intent of the parties must be kept in mind. The purpose of the insured in this case under defendant's policy was to obtain protection against the expense of defending suits, whether meritorious or groundless, within the area and scope of liability covered by the policy. To make this benefit conclusively and in all cases dependent upon the allegations of the complaint over which the insured can exercise no control would leave the protection offered by the policy to happenstance and, in many cases, amount to nothing short of a windfall for the insurer. Seldom would a pleader invite demurrer by charging the defendant with liability for the act of an independent contractor.

We are aware that there is respectable authority holding broadly that the allegations of the complaint in the original action at all events control the duty to defend. Many of these are noted at 50 A.L.R.(2d) 472. At page 473, the editor states that the rationale of the rule is that the insurer is not bound to defend unless it would be obligated to indemnify the insured in event the plaintiff prevails in the suit. This reasoning has been rejected by

many courts of high standing as unsound. See Anno. 50 A.L.R.(2d) 475.

It would not be practicable to attempt here an analysis of the hundreds of cases covered in the above annotation beginning at page 458. It is apparent, however, that in many of them where the insurer was excused from defending, the action which the insurer was called upon to defend was completely outside the scope of coverage. Illustrative cases are those upon policies covering negligent operation of an automobile and the suit against the insured is predicated on illegal employment. In other cases the insurer rather than the insured sought to go behind the allegations of the complaint.

Even when the duty to defend has been said to depend upon the allegations of the complaint, the statement is usually described as being only the general rule and its qualifications noted. See 29A Am.Jur. 564-568, Insurance Sections 1452-1456.

One of these qualifications is that where the allegations of the complaint against the insured are ambiguous or incomplete and it is doubtful whether or not they state a cause of action within the coverage of the policy sufficient to compel the insurer to defend such doubt will be resolved in favor of the insured.

In connection with the above cited annotation it is said editorially (p. 504):

"Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of the

complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.''

We think this qualification of the general rule applies in this case. As we have seen, the duty to defend the Florida actions by the terms of the policy depends upon whether Ulsch was an independent contractor for Dempster. If Ulsch was an independent contractor the policy exclusion does not apply and Dempster is entitled to recover. The complaints in the Florida suits contain the following allegation:

''Harold Ivens was the *agent, employee, and representative* of Dempster Brothers, Inc., and of N. M. Ulsch & Sons, Inc., and was the owner of a Beach Bonanza airplane which he used for the transportation of customers or potential customers of Dempster Brothers, Inc., and of N. M. Ulsch & Sons, Inc., in the regular course of employment.'' (Italics ours)

The relationship between Dempster, the insured, and Ulsch as set forth in the complaints does not exclude the relationship of independent contractor. On the contrary, the complaints can by reasonable and fair construction be said to comprehend an independent contractor relationship.

The word ''representative'' is an elastic term and one to which the courts have been disposed to give a broad interpretation. Hood ex rel. Merchants' & Manufacturers' Bank of Andrews v. Freel, 206 N.C. 432, 174 S.E. 310. It has been said that it may include almost any relationship. 77 C.J.S. pp. 261, 262, citing under the footnotes Hogate v. Hogate, 132 N.J.Eq. 480, 28 A.(2d) 769, 771.

See also Texas Power & Light Co. v. Adamson, Tex.Civ. App., 203 S.W.(2d) 275, 276.

■ The term "agent" has likewise been given a broad interpretation, 2 C.J.S. p. 1025, and is not inconsistent with the term "independent contractor".

"The words 'independent contractor' are used in contrast with the word 'servant' and not with the word 'agent'; for both an independent contractor and a servant are agents of their principal. Rest. Agency, sec. 2, comment b; 1 Mechem on Agency (2d Ed.) sec. 40." Texas Co. v. Mills, 171 Miss. 231, 156 So. 866.

■ We believe enough has been said to show that, at least, there is doubt as to whether the complaints are sufficient to compel the insurer to defend. This doubt, under the authorities above noted, must be resolved in favor of the insured.

■ In this view of the case it becomes unnecessary to decide whether Ulsch was, in fact, an independent contractor. However, for the record, we hold that Ulsch was an independent contractor. The contract between Dempster and Ulsch makes it the duty of Ulsch to perform certain duties for Dempster including the promotion of sales of Dempster products and servicing customers and users within the assigned territory. In the performance of this service Dempster reserved no right of control and Ulsch chose its own means of performance.

It is true the contract states that the relationship between Dempster and Ulsch was that of vendor and vendee. In the sale of the products that was the relationship but in the performance of the services mentioned the relationship was more than that of vendor and vendee and, as we have held, in the performance of these

services Ulsch was an independent contractor. The two relationships can and often do co-exist between the same parties.

 The penalty will be disallowed. In view of the holding in First National Bank in Bristol v. South Carolina Ins. Co. (supra) 207 Tenn. 520, 341 S.W.(2d) 569, we can not say defendant acted in bad faith in litigating the question of liability.

For the reasons indicated the judgment must be reversed and judgment rendered for $9,048.32. Costs of both courts will follow the judgment.

Cooper and Parrott, JJ., concur.