**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0022n.06
Filed: October 8, 2004
No. 03-6236

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SMITH & NEPHEW INC.,
 *Plaintiff-Appellant,*

    v.

FEDERAL INSURANCE COMPANY,
 *Defendant-Appellee.*

On Appeal from the
United States District Court for
the Western District of Tennessee

_____/

BEFORE:  KENNEDY and COOK, Circuit Judges; and Hood, District Judge.[*]

KENNEDY, Circuit Judge.

This appeal arises out of a diversity action for declaratory judgment in which Smith & Nephew sought to establish that Federal Insurance Company had breached defense and indemnity obligations it owed to Smith & Nephew under commercial general liability policies Federal issued on behalf of Smith & Nephew.  Both parties moved for summary judgment, with Federal seeking dismissal and Smith & Nephew requesting a declaration that Federal was liable for reasonable costs it incurred in defending and settling a lawsuit filed against it by Lt. Col. Mary E. Reid.  The district court granted Federal's motion for summary judgment and denied Smith & Nephew's motion.  For the following reasons, we REVERSE.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

**BACKGROUND**

Smith & Nephew is a Memphis based manufacturer of medical and surgical implements, and it supplies these products to hospitals and clinics, including armed forces medical centers. Smith & Nephew purchased commercial general liability insurance policies from Federal with coverage effective from April 1, 1993 to September 20, 1995.

In February 1997, Reid filed a lawsuit naming Smith & Nephew as a defendant. It also named T.G. Medical, Inc., a distributor for Smith & Nephew, and its principal, Terry Geurink, as defendants. In May 1999, Reid filed an amended complaint. Both complaints essentially allege the same underlying facts, namely, that Smith & Nephew conspired with T.G. Medical Inc., Terry Geurink, and Col. Allan Bucknell, Reid's immediate supervisor, to violate federal procurement statutes and to conceal those violations. Specifically, Reid stated that during the course of her service at Brooke Army Medical Center ("BAMC"), she discovered that Col. Bucknell had accepted travel and other expense reimbursements for Smith & Nephew conferences, allegedly in violation of federal procurement laws and regulations. After Reid filed a formal complaint regarding Bucknell's conduct, she claimed that he, along with the defendants, took actions to undermine Reid's reputation and credibility in order that her claims of procurement violations would not be taken seriously. To conceal the procurement violations, Reid alleged, Bucknell, T.G. Medical, and Geurink carried out a series of acts intended to discredit her and to damage her reputation. Many of these alleged acts were in the nature of defamatory and disparaging statements about Reid's integrity and competence as a physician. Moreover, in furtherance of the conspiracy to conceal the procurement violations, Reid alleged that T.G. Medical and Geurink maliciously prosecuted a civil action against her. According to Reid, T.G. Medical and Geurink falsely claimed that she defamed

2

T.G. Medical and tortiously interfered with T.G. Medical's contracts with Smith & Nephew and BAMC.

In May 1999, Smith & Nephew provided notice to Federal with respect to the Reid lawsuit and forwarded to the insurer a copy of Reid's amended complaint. After reviewing the complaint, Federal concluded that the Reid's lawsuit was not covered by Smith & Nephew's policy. Thereafter, Smith & Nephew expended sums to defend itself and eventually settled with Reid.

The commercial general liability insurance contract at issue states, in relevant parts:

COVERAGE
BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, AND ADVERTISING INJURY [-] We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law ... because of ... personal injury or advertising injury to which this insurance applies. This insurance applies ... to personal injury or advertising injury only if caused by an offense committed during the policy period. We will defend any claim or suit against the insured seeking such damages.

DEFINITIONS
PERSONAL INJURY [-] means injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business ... 2. malicious prosecution; ... 4. oral or written publication of material that slanders or libels a person ... or disparages a person's ... services.

EXCLUSIONS
This insurance does not apply to:
INTENTIONAL FALSEHOODS [-] personal injury ... arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity; ... 3. arising out of the willful violation of a penal statute or committed by or with the consent of the insured.

After reading the allegations in Reid's amended complaint against the insurance contract, the district court held that Federal did not owe a duty to defend Smith & Nephew, because, it concluded, Reid alleged in her amended complaint that Smith & Nephew engaged only in a conspiracy to violate procurement statutes and to conceal their violation, which is not covered by the policy, and not that Smith & Nephew engaged in a conspiracy to injure Reid.

3

**ANALYSIS**

We first consider whether Federal had a duty to defend Smith & Nephew against Reid's lawsuit. Tennessee courts have held that "[a]n insurer's duty to defend is separate and distinct [as well as broader than] the insurer's obligation to pay claims under [a] policy." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). In determining an insurer's duty to defend, courts look to the insurance contract provisions and to the allegations in the relevant action. *Id.* "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Id.* Tennessee law further provides that "[an] insurer may not properly refuse to defend an action against its insured unless 'it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage.'" *Id.* Where the allegations of the complaint are ambiguous, any doubts regarding their sufficiency to trigger a defense obligation are resolved in favor of the insured. *See Dempster Bros., Inc. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153, 154-56 (Tenn. Ct. App. 1964). Finally, in determining an insurer's duty to defend, courts typically begin and end their analysis with the four corners of the complaint. *See St. Paul Fire and Marine Ins. Co., v. Torpoco*, 879 S.W.2d 831, 834-35 (Tenn. 1994).

Following this precedent, we must read the insurance contract against the allegations in Reid's complaint to determine whether the contract required Federal to defend Smith & Nephew. Rather than first read the allegations in the original complaint against the terms of the contract to determine whether Federal had a duty to defend under the original complaint, the district court only read the allegations in the amended complaint against the terms of the contract because it concluded, in reliance upon Fed. R. Civ. P. 15, that an amended complaint completely supercedes the original

4

complaint. Although Rule 15 does provide that an amended complaint supercedes an original complaint with respect to which allegations and issues are presented to the court for disposition, it does not support the proposition that a court need not consider whether there was a duty to defend while the original complaint was the effective pleading.[1] To determine whether there was a duty to defend under the original complaint, we must therefore read the allegations of the original complaint against the insurance contract.[2]

In the original complaint, Reid alleged that "Defendants, T.G. Medical and [Smith & Nephew] . . . conspired with Bucknell to injure [her]" by engaging in conduct intended to discredit her. Furthermore, Reid alleged, in furtherance of the conspiracy between Defendants, T.G. Medical maliciously prosecuted Reid by claiming that she defamed it and tortiously interfered with its contracts with SNR and BAMC. It is clear that these allegations implicate the personal injury coverage under the contract for malicious prosecution and defamation. Thus, Federal would have had a duty to defend under the original complaint unless it could point to an exclusion or another provision in the policy that would permit it to deny coverage.

---

[1] The cases cited by the district court also do not support this proposition. *See St. Paul Fire and Marine Ins. Co., v. Torpoco*, 879 S.W.2d 831, 832-34 (Tenn. 1994) (finding a duty to defend under amended complaint, but presenting no issue as to existence of duty under original complaint); *Planet Rock, Inc. v. Regis INs. Co.,* 6 S.W.3d 484, 489 (Tenn. Ct. App. 1999) (finding duty to defend with reference to both original and amended complaints).

[2] Smith & Nephew notes that the district court, in choosing to focus entirely upon the allegations of the amended complaint, may have been influenced by the fact that Smith & Nephew did not notify Federal of the Reid lawsuit until it sent Federal the amended complaint. However, since Federal did not raise any issue regarding timeliness of notice as a defense to its claim for coverage, Smith & Nephew argues, Federal must be found to have waived it. We do not consider here for the first time whether Federal waived its delayed notification defense when the issue was never presented to the district court.

Federal raises three arguments in support of its contention that it owes no duty to defend Smith & Nephew. First, Federal notes that the allegations only allege that the other defendants committed the offenses of defamation and malicious prosecution, and that the policy does not cover the acts of Smith & Nephew's co-defendants. This argument misses the mark. The relevant insuring language provides, "[w]e will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law ... because of ... personal injury ... caused by an offense." This language indicates, therefore, that what matters for purposes of determining coverage is the asserted liability of the insured, not whether it committed the wrongful acts. If Smith & Nephew engaged in a conspiracy to defame and maliciously prosecute Reid, then the policy would apply to cover it because Smith & Nephew would be legally obligated to pay damages to Reid, even though it did not commit any of the overt acts in furtherance of the conspiracy, since a conspirator is held liable for the acts of its co-conspirators.

Next, Federal contends that the policy excludes coverage for Reid's claim because she alleged that her personal injuries arose out of Smith & Nephew's willful violation of a penal statute. This argument also fails. Although Federal did not identify the penal statute in issue, it can only be referring to the procurement laws that Reid alleged Smith & Nephew violated. *See* 41 U.S.C. § 423. Smith & Nephew contends that the exclusion does not apply because Reid did not allege a willful violation of the procurement statutes. However, even if Reid had alleged a willful violation of the procurement statutes, that would still not excuse Federal from its defense obligations. This Circuit's decision in *Aetna Cas. & Sur. Co. v. Sunshine Corp.,* 74 F.3d 685 (6th Cir. 1996), is instructive. In *Sunshine*, the insured (Sunshine) sought a defense in connection with a suit alleging that it had obtained and used a confidential credit report regarding its tenants (the Crockers) in violation of the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq. Id*. at 686. The Crockers alleged that this violation, among others, resulted in injuries for invasion of privacy, mental anguish, and embarrassment. *Id.* The *Sunshine* court assumed that the injuries alleged by the Crockers were of a type that could trigger coverage under the policy. If it were, the court thought it "clear that at the very least Aetna has a contractual obligation to provide sunshine a defense" because even "if there was a violation of the FCRA, ... it remain[ed] to be seen whether the violation was willful." *Id.* Because the Crockers could recover damages for a non-willful violation of the FCRA, this court concluded that the "penal statute" exclusion could not vitiate Aetna's duty to defend Sunshine. *Id.*

Similarly, even if Reid alleged that Smith & Nephew willfully violated procurement statutes, that would not excuse Federal from defending the Reid action because Reid did not need to establish a willful violation to prevail on her 42 U.S.C. § 1985(1) claim. To sustain that claim, Reid was required to prove only that Smith & Nephew conspired to injure her "in [her] person or property on account off [her] lawful discharge of the duties of [her] office." 42 U.S.C. § 1985(1). Therefore, since Reid could recover damages even if she were unable to prove that Smith & Nephew willfully violated the procurement statutes, the "penal statute" exclusion does not vitiate Federal's duty to defend Smith & Nephew.

Finally, Federal agues that it owes no duty to defend because, it claims, Reid's personal injuries did not arise out of an offense committed in the course of Smith & Nephew's business. This argument fails because Smith & Nephew's alleged participation in the conspiracy was to further its business interests by ensuring that its favored relationship with Bucknell and BAMC would be preserved.

7

Next, we consider whether Federal owed a duty to defend Smith & Nephew under the amended complaint. In Smith & Nephew's motion for summary judgment, it submitted that Reid's allegations of malicious prosecution and defamation applied to it, and thus that Federal owed a duty to defend it. The district court acknowledged that if either of these contentions implicated Smith & Nephew, absent an exclusion in the policy, Federal would have a duty to provide a defense. Since we conclude that Reid alleged in her amended complaint that Smith & Nephew engaged in a conspiracy to defame her, which independently requires Federal to provide Smith & Nephew a defense, we need not address whether Reid also alleged that Smith & Nephew engaged in a conspiracy to maliciously prosecute her.

There are no direct allegations in Reid's amended complaint that Smith & Nephew defamed her. Rather, she alleged that only Bucknell, Geurink, and T.G. Medical took overt actions to defame her. However, as the district court noted, Reid often alleged that the actions against her were the products of conspiracies. For instance, Reid alleged that "[t]he activities of Geurink, T.G. Medical, and Bucknell to damage Reid's reputation were overt acts in furtherance of the conspiracy." Thus, if Reid claimed that Smith & Nephew was part of the conspiracy to defame her, then her allegations would invoke the policy's coverage.

The district court acknowledged that some ambiguity regarding which conspiracies Smith & Nephew participated in arose from Reid's changes to her original complaint. Throughout both complaints, Reid plainly alleged that Smith & Nephew was involved in a conspiracy to violate procurement statutes and to cover up those violations.[3] The district court noted, however, that

_____

[3] For instance, Reid alleged that the agreement between Bucknell and Smith & Nephew included concealment of Bucknell's acceptance of gifts from Smith & Nephew; Smith & Nephew concealed from the United States its payments of "gifts" through its certifications of procurement

8

Reid's amended complaint appears to distinguish this conspiracy to conceal the procurement law violations from the conspiracy to injure Reid, when it alleges, "[a]s a result of the continuing conspiracy between Bucknell, [Smith & Nephew], Geurink and T.G. Medical to violate federal procurement regulations, to conceal their violations, and the conspiracy between Bucknell, Geurink and T.G. Medical to injure Reid to prevent discovery of the procurement violations, and the actions taken in furtherance thereof by Defendants, Plaintiff Reid has suffered . . . injuries."

Based upon this allegation, which appears to delineate two separate conspiracies, with Smith & Nephew as a participant only in the conspiracy to violate procurement statutes and to conceal their violation, and based upon the fact that Reid never directly alleged that Smith & Nephew defamed her, the district court concluded that Federal did not owe a duty to defend Smith & Nephew because Reid's amended complaint did not allege that Smith & Nephew engaged in wrongdoing which injured her.

Smith & Nephew challenges this conclusion, relying upon paragraphs 95 and 96 of the amended complaint in support of its contention that Reid did in fact allege that Smith & Nephew was part of a conspiracy to defame her. The paragraphs read, "the continuing conspiracy between Bucknell and the Defendants to violate the federal statutes and regulations relating to procurement integrity, and their continuing efforts to conceal the violations, extended to efforts to prevent Reid's complaints about the violations of federal statutes and regulations to be taken seriously. Bucknell, Geurink, and T.G. Medical each took action designed to damage Reid's reputation and credibility." Smith & Nephew argues that this conspiracy between Bucknell and the Defendants must have

_____

integrity; and as part of the defendants' agreement to conceal the "gifts" Bucknell received from Smith & Nephew, Smith & Nephew sent a letter to Bucknell seeking reimbursement from Bucknell of the expenses he incurred at a medical conference which Smith & Nephew had paid.

included Smith & Nephew because Smith & Nephew was *a* defendant. Since a conspirator is liable for the acts of its co-conspirators, this allegation necessarily alleges, Smith & Nephew contends, that Smith & Nephew is liable for defaming Reid. We agree.

Although one could reconcile the allegation that appears to delineate two separate conspiracies, one in which Smith & Nephew conspired to violate procurement statutes, and the other in which the remaining defendants conspired to injure Reid, with the allegations that allege that "the Defendants" conspired to defame Reid so that her complaints would not be taken seriously, by interpreting "the Defendants" to include all the defendants except Smith & Nephew, such a construction would run counter to the presumptions that a court must accord to the insured. As noted above, Tennessee law provides that an "insurer may not properly refuse to defend an action against its insured unless 'it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage.'" *Drexel Chem.,* 933 S.W.2d at 480. Moreover, where the allegations of the complaint are ambiguous, any doubts regarding their sufficiency to trigger a defense obligation are resolved in favor of the insured. *See Dempster Bros.*, 388 S.W.2d at 154-56. Resolving the ambiguities in Reid's amended complaint in favor of Smith & Nephew, we conclude that it is not "plain from the face of the complaint" that Reid's allegations do not allege that Smith & Nephew conspired to injure her. Thus, Federal owed a duty to defend Smith & Nephew.

**CONCLUSION**

Since the amended complaint did not make the original complaint moot with respect to whether there was a duty to defend under the original complaint, we first considered the allegations

10

made in the original complaint. The original complaint clearly alleged that Smith & Nephew conspired to injure Reid. Since Federal can point to no exclusion in the policy that would permit it to avoid its duty to defend, Federal thus had a duty to defend under the original complaint. With respect to the amended complaint, we also conclude that Federal owed a duty to defend since it is not plain on the face of the complaint that Reid did not allege that Smith & Nephew conspired to injure her.

Therefore, we REVERSE the district court's judgment and remand the case for further proceedings consistent with this opinion.