IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 12, 2004 Session

## SOUTHLAND MALL, LLC v. VALOR SECURITY SERVICES, INC.

**An Appeal from the Circuit Court for Shelby County**
**No. 004295-02     George H. Brown, Jr., Judge**

_____

**No. W2003-03066-COA-R3-CV - Filed April 4, 2005**

_____

This is a breach of contract case.  The service contract between the plaintiff shopping mall and the defendant security company provided that the security company would "defend, indemnify, and hold harmless" the mall for claims brought against the mall that related to or resulted from the services of the security company.  An automobile accident on the mall parking lot resulted in the death of a child.  The child's mother sued the shopping mall and the security company for wrongful death.  The complaint alleged that the driver of the car was under the observation of a security company agent who "was or should have been in contact with the driver" when the accident occurred.  The security company refused to defend the mall, maintaining that the lawsuit did not result from the services it provided.  The trial court granted summary judgment to the security company, holding that the security company had no duty to defend the suit.  We reverse, finding that the language in the complaint was sufficient to trigger the duty to defend.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S. and DAVID R. FARMER, J., joined.

John H. Dotson and Andrea N. Malkin, Memphis, Tennessee, for the Plaintiff/Appellant, Southland Mall, LLC.

Charles O. McPherson and Alicia Y. Cox, Memphis, Tennessee, for the Defendant/Appellee, Valor Security Services, Inc.

**OPINION**

Plaintiff/Appellant Southland Mall, LLC ("Southland") is a shopping center located in Shelby County, Tennessee.  Southland contracted with Valor Security Services, Inc. ("Valor") to provide on-site mall security and public safety services.[1]  The pertinent section of the contract provided that Valor would

---

[1] The original contract was between Equitable Life Assurance Society of the United States, the former owner of the Southland mall.  Southland Mall, LLC purchased the mall and became the successor in interest to the contract with Valor.

defend, indemnify and hold harmless [Southland] . . . from and against any and all claims, demands, losses, damages, injuries, liabilities, expenses, judgments, liens, encumbrances, orders and awards (all of which are collectively referred to as "claims"), together with attorneys' fees and litigation expenses, on account of: (1) injury to or death of, any person . . . or (7) failure by [Valor] to perform its obligations hereunder, but all of the foregoing shall apply only to the extent that the foregoing relate to or result from the Services performed or to be performed . . . under or in connection with this Agreement.

On August 18, 2000, a vehicle parked in the Southland parking lot backed into a small child, Diamond Kierra Wiseman, and killed her. The child's mother, Sharonda Wiseman ("Wiseman") sued the driver of the vehicle, Southland, and "John or Jane Doe Security Agents of Southland Mall, LLC"[2] alleging wrongful death. Wiseman asserted that the accident occurred within the observation of Southland security personnel. Wiseman alleged that "[a]t all times pertinent to this complaint, defendant, Southland Mall, LLC, its agent and/or employee, was or should have been in contact with the defendant driver or directing her when the fatal accident occurred."

On July 30, 2002, after Wiseman's wrongful death lawsuit was filed, Southland filed a Complaint for Declaratory Judgment against Valor. The declaratory judgment action asked the trial court to declare that Valor was obligated to defend and indemnify Southland in Wiseman's wrongful death lawsuit. On August 29, 2002, Valor filed an answer to Southland's complaint for declaratory judgment, denying any duty to defend or indemnify Southland in the wrongful death action.

On June 20, 2003, Southland filed a Second Amended Complaint.[3] This amended complaint added a claim for breach of contract and withdrew the request for a declaratory judgment. In addition, Southland sought monetary damages against Valor, including the legal fees and expenses incurred in defending Wiseman's wrongful death suit and in litigating the breach of contract action.

In response, Valor filed a counter claim against Southland, seeking recovery of legal fees and expenses incurred in defending Southland's breach of contract claim. Both parties then filed cross-motions for summary judgment. The cross-motions were heard on November 21, 2003. During the hearing, the following colloquy occurred between the trial judge and Southland's counsel:

| Ms. Malkin: | I agree, your honor, but I would submit that that statement in the complaint triggered the claim against Southland Mall. When that claim was filed, Southland Mall in turn asked Valor for the duty to defend, which was declined. |
|---|---|
| Court: | What did Southland do? |
| Ms. Malkin: | Southland Mall pursued that lawsuit. |

---

[2] At the time the complaint was filed, Wiseman did not know the identity of Southland's security agent.
[3] The complaint was initially amended on August 1, 2002. The amended complaint referenced the portion of the Continuing Services agreement that provided for attorney's fees to a prevailing party in a breach of contract dispute. The amended complaint then requested attorney's fees associated with bringing this cause of action.

Court:        What did they do?

Ms. Malkin:   Hired an attorney. The case went into litigation and was eventually dismissed.

Court:        It was dismissed?

Ms. Malkin:   Correct.

Court:        So somebody concluded that the cause of action was without merit?

Ms. Malkin:   I am not.

Court:        Is that a fair statement?

Ms. Malkin:   Fair statement. I'm not privy to the exact settlement and whatever but it was dismissed. I would agree to that.

Court:        Anything else?

Ms. Malkin:   The issue with respect to today is Southland Mall's desire to have the costs associated with that litigation reimbursed and attorney's fees. Thank you, your Honor.

Court:        I'm going to deny your motion.

The trial court then denied Southland's motion for summary judgment and granted Valor's motion for summary judgment. Southland now appeals. On appeal, Southland alleges that Wiseman's wrongful death complaint triggered Valor's duty to defend under the contract between Southland and Valor, and that the trial court erred when it granted summary judgment to Valor based on the merits of the wrongful death lawsuit.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

On appeal, Southland first asserts that Valor had a duty to defend Southland based on the language of the service contract. It is undisputed that Southland contracted with Valor to "[p]rovide on-site mall security/public safety services." The contract further provided that Valor "shall perform the services as described and at the times specified below, and in accordance with Addendum A attached hereto." Addendum A, designated as the "Continuing Services Agreement," stated that "[a]ll exhibits, schedules and addenda attached hereto or referred to herein are hereby incorporated by reference." Exhibit A to the Continuing Services Agreement set forth training requirements for security personnel. Exhibit A specified that training should include "traffic control, crowd control, crime scene preservation, evacuation plan, [and] emergency procedures." Southland alleges that this portion of the exhibit to the addendum to the service contract shows that Valor had a duty to perform

3

traffic control and public safety duties. As a result, Southland contends, Valor had a duty to defend Southland in a lawsuit arising from those duties.

On this basis, Southland asserts, the language of Wiseman's wrongful death complaint triggered Valor's duty to defend. First, Southland notes that the complaint listed "John or Jane Doe security agents of Southland Mall" as defendants. The complaint also alleged that the "minor plaintiff decedent was on the parking lot of Southland, within observation of security personnel" when the accident occurred and that "defendant Southland, its agent and/or employee, was or should have been in contact with the defendant driver or directing her when the fatal accident occurred." In addition, the complaint stated that "[p]laintiffs rely upon the doctrines *respondeat superior* and/or agency . . . for all matters relating to the lawsuit."

Valor asserts that its refusal to defend Southland in the wrongful death lawsuit was not a breach of its service agreement with Southland when it refused to defend Southland. Valor first notes that traffic control was not one of its enumerated duties under the Continuing Services Agreement, and argues that, as a result, it did not have a duty to defend. Valor concedes that Exhibit A to the Addendum to the Agreement, which mandated training in traffic control, was incorporated into the agreement. However, Valor contends that Exhibit A does not set forth the job duties or responsibilities of Valor security guards; it merely lists traffic control as one of the areas in which security guards would receive training.

Valor asserts that this Court must look to the underlying wrongful death complaint to ascertain if the complaint asserted a "claim of the kind contemplated by the contract language." *Penny v. Karp*, No. 200000528A, 2002 WL 31187760, *2 (Mass. Super. July 9, 2002). Valor argues that they had no duty to defend because, even if this Court found that Valor was obligated to provide traffic control services, Valor did not have a duty to be in contact with and direct the driver of each car in the parking lot. Thus, the accident did not result from a service performed or to be performed by Valor and did not trigger the duty to defend.

While there appears to be no Tennessee case law directly on point, Tennessee cases discussing the duty to defend in the insurance context are instructive. In *Dempster Brothers, Inc. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964), this Court outlined the general principle relevant to the duty to defend:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of the complaint against the insured state a cause of action within the coverage of their liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.

*Id*. at 156. Thus, in the insurance context, the duty to defend is triggered when the language of the complaint states a cause of action that *may* be covered under the policy.

4

Other jurisdictions have considered the duty to defend outside the context of insurance. In *Penny v. Karp*, No. 200000528A, 2002 WL 31187760 (Mass. Super. July 9, 2002) the plaintiff sued a shopping mall and the mall's security company, Spectaguard, for injuries resulting from a fall on the mall's sidewalk. *Id*. at *3. The plaintiff alleged that the fall resulted from defective condition in a brick walkway at the mall. *Id.* at *1. The mall had contracted with Spectaguard to "police the premises and report all unusual or hazardous conditions noted at the premises to the client." *Id*. The service agreement between the mall and Spectaguard provided that "Spectaguard shall protect, defend . . . hold harmless and indemnify client . . . against all claims, actions, lawsuits, liabilities . . . which actually or allegedly arise out of the acts or omissions of Spectaguard or its employees under this agreement." *Id.* at *2.

After the plaintiff filed suit against the mall and Spectaguard, the mall sought indemnification and defense from Spectaguard, which Spectaguard declined. *Id*. at *2. As a result, the mall filed suit against Spectaguard. The Superior Court of Massachusetts ordered Spectaguard to defend the mall in the trip and fall lawsuit, holding "that the undisputed facts are reasonably susceptible of an interpretation that it states a claim envisioned by the contract between the parties." *Id*. at *5.

Under both *Dempster* and *Penny*, the duty to defend was triggered by the language of the underlying complaint, without regard to the merits of the underlying suit. In this case, while Valor's duties under the service agreement are far from clear, it is certainly arguable that they include traffic safety. Moreover, the wrongful death complaint clearly alleged that Southland's agent, Valor, was negligent, asserting that Valor, Southland's agent, "was . . . in contact with the defendant driver or directing her when the fatal accident occurred."

Valor argues that the mall security guards cannot be held to have a duty to direct every car in the mall parking lot, and we agree. It is clear, however, that the wrongful death complaint in this case alleged that the mall security guard's negligence contributed to the accident. Without addressing the merits of the allegation, this language in the complaint was enough to trigger Valor's contractual duty to defend. As a result, we must reverse the grant of Valor's summary judgment motion and the denial of Southland's summary judgment motion.

The decision of the trial court is reversed and the cause remanded for further proceedings not inconsistent with this Opinion. Costs of the appeal are charged to Valor Security Services, Inc., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE